[No. H000410. Sixth Dist. Sept. 22, 1986.]

B & P DEVELOPMENT CORPORATION, Plaintiff and Appellant, v. CITY OF SARATOGA, Defendant and Respondent.

**COUNSEL**

Burnett, Burnett & Allen, Douglas B. Allen and Bruce F. Allen for Plaintiff and Appellant.

Harold S. Toppel, City Attorney, and Steven G. Baird, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**AGLIANO, P. J.—**

### I

Plaintiff B & P Development Corporation, doing business as B & P Inc., appeals from an order dismissing the action after a general and special demurrer by defendant City of Saratoga (City) was sustained without leave to amend. Plaintiff seeks a refund of various development fees expended on a subsequently abandoned condominium project. We affirm for the following reasons.

### II

*Scope of Review*

■ A general demurrer presents the same question to the appellate court as to the trial court, namely, whether the plaintiff has alleged sufficient facts to justify any relief, notwithstanding superfluous allegations or claims

for unjustified relief. (*Harnish* v. *Bramer* (1886) 71 Cal. 155, 158 [11 P. 888]; *Matteson* v. *Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436]; *California Trust Co.* v. *Cohn* (1932) 214 Cal. 619, 628 [7 P.2d 297]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) "[T]he allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452.)" (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) Pleading defects which do not affect substantial rights of the parties should be disregarded. (Code Civ. Proc., § 475; *Hill* v. *City of Santa Barbara* (1961) 196 Cal.App.2d 580, 585 [16 Cal.Rptr. 686].)

In evaluating a demurrer, we assume the truth of all material facts properly pleaded in the complaint unless they are contradicted by facts judicially noticed (Code Civ. Proc., §§ 430.30, subd. (a), 430.70; *Saltares* v. *Kristovich* (1970) 6 Cal.App.3d 504, 510 [85 Cal.Rptr. 866], and cases there cited) but no such credit is given to pleaded contentions or legal conclusions. (*Branham et al.* v. *Mayor and Common Council of San Jose et al.* (1864) 24 Cal. 585, 602; *Daar* v. *Yellow Cab. Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) Specific factual allegations modify and limit inconsistent general statements. (*Little* v. *Union Oil Co.* (1925) 73 Cal.App. 612, 619 [238 P. 1066]; *Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 422 [282 P.2d 890]; *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 328-329 [253 P.2d 659].) In particular, a general description of an exhibit attached to a complaint will be disregarded where inconsistent with the exhibit. (*Stoddard* v. *Treadwell* (1864) 26 Cal. 294, 303; *Ventura etc. Ry. Co.* v. *Hartman* (1897) 116 Cal. 260, 263 [48 P. 65]; *Hill, supra,* 196 Cal.App.3d at p. 586; *Hilltop Properties* v. *State of California* (1965) 233 Cal.App.2d 349, 353 [43 Cal.Rptr. 605, 37 A.L.R.3d 109].)

### III

### *The Complaint*

The subject of this appeal is plaintiff's second amended complaint, filed after a demurrer was sustained by stipulation to the first amended complaint. The original had been amended as a matter of course (Code Civ. Proc., § 472) without prior demurrer. It attempts to state five causes of action, all seeking recovery of development fees plaintiff paid to defendant in the course of subdividing property for condominium units.

The first cause of action alleges: on August 21, 1980, defendant's City council granted conditional approval for a subdivision map containing plaintiff's plan for developing condominium units on certain property located in

the City. Both before and after obtaining defendant's approval, plaintiff paid defendant the following fees as a condition of subdividing the property: On July 8, 1980, storm drain connection fees of $6,655.70, park development fees of $26,900, engineering and inspection fees of $8,400; probably on the same date (the check copy is virtually illegible) a cash deposit regarding an improvement contract of $10,000, and on July 25, 1980, sewer connection fees of $600, and on April 1, 1982, fees for letters of credit of $641.55;[1] all totaling $53,197.25. These fees were based on the proposed number of condominium units. Defendant subsequently abandoned the project without building any units and in early 1983, filed a governmental claim for refund of the fees, which defendant denied.

The second cause of action alleges that after obtaining defendant's subdivision map approval, on September 16, 1980, plaintiff paid defendant $12,750.76 in building permit fees, which were based on the proposed number of condominium units. Defendant subsequently abandoned the project without building any units and, in early 1983, filed a governmental claim for refund of the fees, which defendant denied.

The third cause of action alleges that in connection with the fees described in the first cause of action, plaintiff is informed and believes that in 1983 defendant rezoned the subject property, which extinguished plaintiff's development rights under the approved subdivision map. Defendant has refused plaintiff's claim for a refund and is unjustly enriched.

The fourth cause of action alleges the rezoning had the same effect as described in the third cause of action on the building permit fees described in the second cause of action.

The fifth cause of action alleges defendant has unlawfully taken plaintiff's development rights by rezoning the property as described in the third and fourth causes of action.

IV

*Subdivision Map Act Fees*

We now examine the statutory basis for the fees in order to locate any refund provisions.

---

[1] The exhibits attached to the complaint indicate these fees were paid to a bank and not the defendant.

## A. *Park Fees*

Some of the development fees which are the subject of the first, third and fifth causes of action were imposed pursuant to provisions in the Subdivision Map Act (Map Act). (Gov. Code, tit. 7, div. 2, § 66410 et seq.)[2] ▮ We observe in general a city cannot, as a condition of granting subdivision map approval, exact general revenue fees not specifically authorized by the Map Act. (*Kelber* v. *City of Upland* (1957) 155 Cal.App.2d 631, 638 [318 P.2d 561]; *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara* (1965) 232 Cal.App.2d 564, 572-578 [43 Cal.Rptr. 86];[3] 63 Ops.Cal.Atty.Gen. 64 (1980).)

The $26,900 park development fee was authorized by section 66477, which provided in 1980 (Stats. 1979, ch. 1192, § 7, pp. 4694-4695): "The legislative body of a city or county may, by ordinance, require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for park or recreational purposes as a condition to the approval of a final map or parcel map, provided that: . . . [¶] (c) The land, fees, or combination thereof are to be used only for the purpose of providing park or recreational facilities to serve the subdivision. . . . [¶] (e) The amount . . . of land to be dedicated or the fees to be paid shall bear a reasonable relationship to the use of the park and recreational facilities by the future inhabitants of the subdivision. [¶] (f) . . . . Any fees collected under the ordinance shall be committed within five years after the payment of such fees or the issuance of building permits on one-half of the lots created by the subdivision, whichever occurs later. If such fees are not committed, they shall be distributed and paid to the then record owners of the subdivision in the same proportion that the size of their lot bears to the total area of all lots within the subdivision. . . ."

Defendant City had a subdivision ordinance (§ 13.8) in effect at the time which authorized collection of park fees.

## B. *Storm Drain and Sewer Connection Fees*

We presume the statutory basis for the $6,655.70 storm drain connection fee and the $600 sewer connection fee is section 66483, which provides: "There may be imposed by local ordinance a requirement for the payment

---

[2]Further statutory citations are to the Government Code unless otherwise noted.

[3]We recognize these cases have been disapproved in part by *The Pines* v. *City of Santa Monica* (1981) 29 Cal.3d 656, 664 [175 Cal.Rptr. 336, 630 P.2d 521]. That case held the Map Act does not limit local authority to impose revenue taxes on a condominium development. No one has suggested in our case that any of the fees is in the nature of a general revenue tax.

of fees for purposes of defraying the actual or estimated costs of constructing planned drainage facilities for the removal of surface and storm waters from local or neighborhood drainage areas and of constructing planned sanitary sewer facilities for local sanitary sewer areas, subject to the following conditions: . . ." The drainage and sanitary sewer fees must be no greater than necessary and used to construct facilities to benefit the subdivision. (§ 66483.)

When there is a surplus, no more than 5 percent of such unexpended funds may be transferred to the city's general fund. (§ 66483.1, subd. (a).) Otherwise it must be used to improve the facilities within the affected area (§ 66483.1, subd. (b)) or refunded (§ 66483.1, subd. (c)). The refund goes to the current lot owners and then, if unclaimed, to the city. (§ 66483.2.)[4]

Defendant City's subdivision ordinance (§ 4) imposed a storm drainage fee. Defendant City characterizes the sewer connection fee as really a performance bond, but recognizes that the record does not support this contention. Based on the allegations of the complaint, we must presume it is related to the storm drainage fee.

### C. *Performance Security Fees*

The $10,000 cash deposit was part of the security to guaranty plaintiff would perform certain improvements, such as building and maintaining streets, which was authorized by section 66499 et seq. Presumably the $641.55 expended for letters of credit was also part of the security. The security may be partially or wholly released upon the subdivider's promised performance. (§ 66499.7.) Defendant City's subdivision ordinance (§ 17) required such a security.

### D. *Engineering and Inspection Fees*

Defendant City has not directed us to any statutory basis for the $8,400 engineering and inspection fee, other than its own subdivision ordinance

---

[4]Section 66483.2 provides: "Any surplus remaining shall be refunded as follows:

"(a) There shall be refunded to the current owners of property for which a fee was previously collected, the balance of such moneys in the same proportion which each individual fee collected bears to the total of all individual fees collected from the particular drainage or sewer area;

"(b) Where property for which a fee was previously collected has subsequently been subdivided into more than one lot, each current owner of a lot shall share in the refund payable to the owners of the property for which a fee was previously collected in the same proportion which the area of each individual lot bears to the total area of the property for which a fee was previously collected; and

"(c) There shall be transferred to the general fund of the county or city any remaining portion of the surplus which has not been paid to or claimed by the persons entitled thereto within two years from the date either of the completion of the improvements, or the adoption by the legislative body of a resolution declaring a surplus, whichever is later to occur."

(§ 4), which provides in pertinent part: "The inspection fee to be paid on filing of improvement plans shall be a percentage of the estimated costs of the improvements as determined by the City Engineer excluding any cost of constructing sanitary sewers and/or public utilities . . . . [¶] Upon payment of said fee, the City Engineer shall assume full jurisdiction over the inspection of construction of the improvements after the subdivider's engineer has set alignment and grade stakes in accordance with accepted engineering practice. Upon satisfactory completion of improvements the City Engineer will certify to the City Council that the improvements have been completed in accordance with this ordinance. If the actual cost of the improvement is less than the estimated cost, the balance of the fee remaining shall be refunded to the subdivider. If the actual cost of the improvement exceeds the estimated cost, the subdivider shall pay such additional fee before final acceptance. [¶] Accurate cost data based upon contract unit prices and final quantities shall be submitted to the City Engineer by the subdivider within 90 days after construction is completed. If this provision is not complied with, there shall be no refund of any fees to the subdivider. Anything to the contrary hereinabove notwithstanding, in no event will the amount of the original fee, less any refund, be less than the actual cost of inspection services provided by the CITY based on time, materials, equipment and overhead. [¶] In the event the cost data furnished by the subdivider shows the actual cost of the actual improvements to be less than the estimated cost, any refund due thereby shall not be computed or paid until the expiration of subdivider's maintenance time of said improvements and the correction of any and all deficiencies in construction and maintenance, and the final acceptance of said improvements by the CITY."

Section 66451.2 at the time of the payment provided: "The local agency may establish reasonable fees for the processing of tentative, final and parcel maps and for other procedures required or authorized by this division or local ordinance." (Stats. 1974, ch. 1536, § 4, pp. 3473-3474.) An additional fee may be imposed if the owner requests a certificate of compliance with the act from the city, but none is required when there is a filed and recorded final map. (§ 66499.35, subds. (a), (d); Stats. 1977, ch. 234, § 14, p. 1039.)

We are not sure that these provisions or any others in the Map Act authorize the city engineer to charge for inspection and approval of planned improvements as a condition of filing a final subdivision map, although the parties do not share our concern. A certificate by the city engineer is required to be filed with the final map (§ 66435) which attests to compliance with the Map Act and applicable local ordinances (§ 66442, subd. (a)(3)). But the focus of the act is on the preparation of adequate plans, not the adequacy of the subsequent construction.

The complaint and the ordinance do not clarify to which specific improvements the engineering and inspection fee apply. Perhaps these fees arise by a contract between the developer and the city. A city may approve a final map with improvements still under construction conditioned on an agreement with the subdivider that either the city or the subdivider will complete the planned improvements. (§ 66462, subd. (a).) (Cf. *City of Buena Park* v. *Boyar* (1960) 186 Cal.App.2d 61, 66-67 [8 Cal.Rptr. 674]; *County of Kern* v. *Edgemont Dev. Corp.* (1963) 222 Cal.App.2d 874, 878-879 [35 Cal.Rptr. 629].) Alternatively, if the improvements are buildings, the fee may be justified as building permit fees discussed separately below.

E. *General Refund Provisions*

We have already quoted the specific refund provisions applicable to park fees, storm drain and sewer fees, and engineering and inspection fees. We now take note of general refund provisions in the Map Act. The final act in establishing a subdivision under the act is for the subdivider to file and record a final map. (§§ 66412.7, 66425, 66426, 66429, 66440, 66457, 66468.) The act allows for a subdivision to revert to acreage thereafter. (§ 66499.11 et seq.) The procedure commences with a petition and involves findings by the legislative body that any dedications are not needed and either all property owners consent, or none of the planned improvements were built within either two years of recordation of the final map or an agreed later time, or no lots have been sold within five years of recording the final map. (§ 66499.16.) Reversion takes effect upon filing of a final map. (§ 66499.18.) "When a reversion is effective, all fees and deposits shall be returned and all improvement security released, except those retained pursuant to Section 66499.17." (§ 66499.19.) Section 66499.17 states: "As conditions of reversion the legislative body shall require: [¶] (a) Dedications or offers of dedication necessary for the purposes specified by local ordinances following reversion. [¶] (b) Retention of all previously paid fees if necessary to accomplish the purposes of this division or local ordinance adopted pursuant thereto. [¶] (c) Retention of any portion of required improvement security or deposits if necessary to accomplish the purposes of this division of [*sic*] local ordinance adopted pursuant thereto."

V

*Case Law*

In the lower court the disagreement between the parties was whether plaintiff had stated a cause of action in contract or quasi-contract for a refund of development fees. They also disagreed on whether the second amended complaint was uncertain. The court order sustaining the demurrer

adequately incorporated by reference all the grounds stated in the general and special demurrer to support its order. (Code Civ. Proc., § 472d.) As plaintiff's counsel contended at oral argument, ordinarily on appeal we determine whether any of the grounds raised by the defendant's demurrer justifies the court's ruling. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 627 [137 Cal.Rptr. 681]; see *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 504 [146 Cal.Rptr. 614, 579 P.2d 505].)

■ An appellate court may also consider new theories on appeal from the sustaining of a demurrer to challenge or justify the ruling. As a general rule a party is not permitted to change its position on appeal and raise new issues not presented in the trial court. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517], and cases there cited.) This is particularly true "when the new theory depends on controverted factual questions whose relevance thereto was not made to appear" in the trial court. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 780 [97 Cal.Rptr. 657, 489 P.2d 537].) However, "a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts." (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; cf. *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738].) A demurrer is directed to the face of a complaint (Code Civ. Proc., § 430.30, subd. (a)) and it raises only questions of law (Code Civ. Proc., § 589, subd. (a); *Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 611 [116 Cal.Rptr. 919]). Thus an appellant challenging the sustaining of a general demurrer may change his or her theory on appeal (*Mull* v. *Hunter* (1968) 266 Cal.App.2d 657, 660 [72 Cal.Rptr. 201]), and an appellate court can affirm or reverse the ruling on new grounds. (Cf. *Zappas* v. *King Williams Press, Inc.* (1970) 10 Cal.App.3d 768, 771 [89 Cal.Rptr. 307]; *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, 656, fn. 1 [130 Cal.Rptr. 230].) After all, we review the validity of the ruling and not the reasons given. (*Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2 [108 Cal.Rptr. 219].)

We requested further briefing discussing *Wright Development Co.* v. *City of Mountain View* (1975) 53 Cal.App.3d 274 [125 Cal.Rptr. 723], where a property owner was found entitled to reimbursement of development fees. The owner commenced conversion of an apartment building to condominiums, which required compliance with the Map Act. The owner obtained the city's approval of a tentative map and paid a fee in lieu of dedicating park or recreational land. The city then approved of the final subdivision map. After five months without recording the final map, the owner decided to abandon the plan and so notified the city, asking for return of its fee payment. The city declined to return the fee.

The opinion explains that prior to the lawsuit, "the approval of the subdivision map expired by operation of law." (*Id.,* at p. 276.) While the opinion does not elaborate further, the former Subdivision Map Act then applicable provided: "Any failure to record a final map within the period prescribed by ordinance from the approval or conditional approval of the tentative map or any extension thereof granted by the governing body, shall terminate all proceedings. Before a final map may thereafter be recorded, a new tentative map shall be submitted." (Former Bus. & Prof. Code, § 11555 (Stats. 1965, ch. 1180, § 12, p. 2985); see now Gov. Code, § 66452.6.)

The appellate court determined the property owner was entitled to a refund. The court did not perceive any restriction in former Business and Professions Code section 11546 (*id.,* at p. 275, fn. 1; now Gov. Code, § 66477) on use of the fees only to benefit the subdivision (*id.,* at p. 276), but did conclude that no condominium subdivision ever came into existence, so there was no basis for collecting the fee and it must be returned. (*Id.,* at p. 277.)

We find *Wright Development Co.* distinguishable in two important respects. ■ First, we judicially notice, at defendant's request and over plaintiff's objection, that plaintiff on September 16, 1980, filed and recorded its final subdivision map. (Evid. Code, § 452, subds. (g), (h).) "An appellate court is permitted to take judicial notice of any matter specified in Evidence Code section 452, although the trial court did not take notice of it and it is not in the record, so long as a record is made of the matter and each party is afforded an opportunity to respond to it. (Evid. Code, § 459 . . . .)" (*Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 162 [225 Cal.Rptr. 364].)

The *Wright* court was confronted with an approved, but unrecorded, final map, which had expired and lost effect because not recorded within a certain time. The *Wright* court addressed a situation where the subdivider had no existing authorization to create a condominium. In contrast, the subdivider here, having caused an approved final map to be filed and recorded, is entitled to proceed with the subdivision, subject, of course, to any other applicable legal requirements, such as building permits. (*Hazon-Iny Development, Inc.* v. *City of Santa Monica* (1982) 128 Cal.App.3d 1, 10-11 [179 Cal.Rptr. 860]; cf. *Blue Chip Properties* v. *Permanent Rent Control Bd.* (1985) 170 Cal.App.3d 648, 661-662 [216 Cal.Rptr. 492], and cases there cited; see *People* v. *County of Kern* (1974) 39 Cal.App.3d 830, 837-839 [115 Cal.Rptr. 67].) The Map Act does not limit the time for a subdivider to meet any conditions imposed by local government, so far as we can ascertain. Instead, the local legislative body is authorized to enter into an

agreement whereby it or the subdivider will complete unfinished improvements, apparently at a mutually agreeable time after recordation of the final map. (Gov. Code, § 66462.) Thus, the subdivider is in no danger under the Map Act of a final recorded map lapsing or expiring simply due to the passage of time.[5]

More importantly, *Wright* is distinguishable because under the version of the Map Act then in effect, there was no general provision for a refund of fees upon a reversion to acreage. The act did contain a comparable procedure allowing the local governing body to revoke its approval of a final map on which no action had been taken for a specified time, but this procedure did not expressly provide for a fee refund. (Former Bus. & Prof. Code, § 11640; Stats. 1959, ch. 1956, § 1, p. 4561.) The *Wright* court filled in a gap in the earlier legislation to address the possibility of a fee refund on abandonment of a subdivision.

■ We decline to similarly create a common law alternative provision for obtaining a refund now that, as noted above, the current version of the Map Act expressly provides for a refund of all unused and unnecessary fees upon a formal reversion to acreage. (Gov. Code, §§ 66499.17, 66499.19.) Moreover, we have seen there are alternative provisions for obtaining a refund of excess, unused park (§ 66477, subd. (f))[6] and storm drain and sewer connection fees (§ 66483.2). We also note defendant City has provided in its ordinance for a similar alternative refund of excess, unused engineering and inspection fees.

A statutory remedy for a statutory right is considered exclusive where the Legislature so intended (*Strauss* v. *A. L. Randall Co.* (1983) 144 Cal.App.3d 514, 518-519 [194 Cal.Rptr. 520]; see cases cited in *Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 112 [180 P.2d 321, 171 A.L.R. 913]), but such intent will not be found where the remedy is patently inadequate. (*Id.,* at pp. 113-115.) We conclude the Subdivision Map Act does prescribe the exclusive means after recordation of a final map for obtaining a refund of those development fees which are imposed pursuant to the act. The Legislature has generally occupied the statutory field related to subdivision maps, although the Map Act does contemplate supplemental

---

[5]If there has been any agreement or local regulation to the contrary in our case, it is not contained in the record.

[6]We note that more than five years have passed since the park fees were paid in July 1980. Nevertheless, we are not concerned with the statute requiring park fees to be committed within five years or returned to the property owners, because the original complaint was filed in September 1983. Generally, a lawsuit cannot be filed in anticipation of the occurrence of facts constituting a cause of action. (Cf. *Gardner* v. *Shreve* (1949) 89 Cal.App.2d 804, 810 [202 P.2d 322].) Also, plaintiff has not claimed a right to a refund under this particular statute.

local regulations which are not inconsistent. (*Friends of Lake Arrowhead v. Board of Supervisors* (1974) 38 Cal.App.3d 497, 505 [113 Cal.Rptr. 539]; *Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 424-426 [209 Cal.Rptr. 519]; see *Griffin Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 261 [217 Cal.Rptr. 1, 703 P.2d 339].)

We have also seen that the Legislature has time and again restricted the exaction of subdivision fees to those reasonably required to regulate and benefit the particular subdivision. The Legislature has also time and again specifically provided methods for obtaining a refund of unused, excess fees. We decline plaintiff's invitation to improve on this comprehensive scheme by judicial creation of an alternative.

In three versions of the complaint, plaintiff never suggested compliance with this statutory refund procedure. ■ Our ultimate concern is: "If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend." (*Youngman, supra,* 70 Cal.2d 240, 245; accord, *Farmers Ins. Exchange* v. *State of California* (1985) 175 Cal.App.3d 494, 507 [221 Cal.Rptr. 225].) "In final analysis, the court is required to look at the existing pleading and hazard its best judgment whether behind the words of the pleading anything of legal substance lies, whether on further revision the pleading can honestly state a cause of action." (*Hills Trans. Co.* v. *Southwest Forest Industries, Inc.* (1968) 266 Cal.App.2d 702, 709 [72 Cal.Rptr. 441].) "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made . . . ." (Code Civ. Proc., § 472c.) Where it does not appear any amendment could create a cause of action, leave to amend need not be granted. (*Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]; *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636-637 [75 Cal.Rptr. 766, 451 P.2d 406].) ■ Since we find a petition for reversion to acreage a prerequisite to a lawsuit demanding a refund, and plaintiff expressed doubt at oral argument this could be alleged, we hold the trial court did not abuse its discretion in sustaining the demurrer without leave to amend to plaintiff's demand for refund of those fees arising under the Map Act in the first, third and fifth causes of action.

We also do not see how the alleged 1983 rezoning could furnish plaintiff an excuse for noncompliance with this procedure for obtaining a refund. The general refund procedure may be invoked either upon rezoning or the subdivider's abandonment of the subdivision or for any other reason, so long as the statutory requirements for reversion to acreage are met.

We do not understand how the retention of the fees constitutes an unconstitutional taking of plaintiff's property without due process of law. Plaintiff advances without elaboration for the first time on appeal the vested rights doctrine, which is predicated in part on this constitutional provision. (*Urban Renewal Agency* v. *California Coastal Zone Conservation Com.* (1975) 15 Cal.3d 577, 583-584 [125 Cal.Rptr. 485, 542 P.2d 645].) But unlike the developers in the cases plaintiff relies on (e.g., *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858 [201 Cal.Rptr. 593, 679 P.2d 27]; *El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276]), plaintiff here does not seek to develop its property free from additional governmental regulation. It simply wants its money back. As we have pointed out, there is a process by which a subdivider might obtain a fee refund. Plaintiff does not challenge the adequacy of this procedure and we perceive no glaring constitutional problem with it.

## VI

### *Building Permit Fees*

The building permit fees of $12,750.76 which are the subject of the second, fourth and fifth causes of action were imposed pursuant to a provision in the State Housing Law. (Health & Saf. Code, div. 13, pt. 1.5, § 17910.) This law requires cities to adopt (§ 17958) and enforce (§ 17960) state building standards, including those based on the Uniform Building Code (§ 17922, subd. (a)(2)). In 1980, when these fees were paid, section 17951 provided: "(a) The governing body of any city or county may prescribe fees for permits, certificates, or other forms or documents required or authorized by this part or rules and regulations promulgated pursuant thereto. [¶] (b) The governing body of any city or county or fire protection district may prescribe fees to defray the costs of enforcement required by this part to be carried out by local enforcement agencies. [¶] (c) The amount of the fees prescribed pursuant to subdivisions (a) and (b) of this section shall not exceed the amount reasonably required to administer or process such permits, certificates, or other forms or documents, or to defray the costs of enforcement required by this part to be carried out by local enforcement agencies, and shall not be levied for general revenue purposes. . . ." (Stats. 1979, ch. 1152, § 76.5, pp. 4268-4269.)

A city is required to keep an official copy of building plans (Health & Saf. Code, § 19850) but may charge for so doing. In 1980, section 19852 provided: "The governing body of a city or county may prescribe such fees as will pay the expenses incurred by the building department of such city or county in maintaining the official copy of the plans of buildings for which it has issued a building permit." (Stats. 1971, ch. 616, § 1, p. 1218.)

Specific plan review and building permit fees were imposed as provided for by the 1979 Uniform Building Code section 304. Under the applicable 1979 Uniform Building Code, the building permit lapsed if no work commenced within 180 days of the date of the permit. (§ 303, subd. (d).) A permittee could obtain up to an 80 percent refund of permit and plan review fees, so long as a written refund request was made within 180 days of the fee payment. (§ 304, subd. (e).)

The State Housing Law itself contains no provisions comparable to the Map Act for obtaining a fee refund. However, the Uniform Building Code which it incorporates by reference does contain refund provisions. In three versions of the complaint, plaintiff never suggested compliance with this statutory refund procedure.

Plaintiff objects to consideration of a statute of limitations defense on appeal because it was not raised in the trial court. It is true that an appellate court usually will not consider the effect of a statute of limitations asserted for the first time on appeal. (*Coruccini* v. *Lambert* (1952) 113 Cal.App.2d 486, 491-492 [248 P.2d 457]; *DeCelle* v. *City of Alameda* (1963) 221 Cal.App.2d 528, 533 [34 Cal.Rptr. 597]; *Miller* v. *Parker* (1933) 128 Cal.App. 775, 777-778 [18 P.2d 89]; cf. *Bliss* v. *Sneath* (1898) 119 Cal. 526, 528-529 [51 P. 848].) But this authority is beside the point because we are not dealing with a law limiting the time to file a lawsuit.

Instead, we find the requirement for filing a refund claim under the Uniform Building Code to be comparable to the statutory prerequisite of presenting a governmental claim prior to filing suit against a public entity. (Gov. Code, § 945.4.) It is an element of the cause of action, subject to general demurrer, that a timely demand has been presented to the public entity and rejected or there is an excuse for noncompliance. (*Tietz* v. *Los Angeles Unified Sch. Dist.* (1965) 238 Cal.App.2d 905, 911-912 [48 Cal.Rptr. 245]; *Wilson* v. *People* ex rel. *Dept. Pub. Wks.* (1969) 271 Cal.App.2d 665, 668-669 [76 Cal.Rptr. 906], criticized on other grounds in *Bahten* v. *County of Merced* (1976) 59 Cal.App.3d 101, 113 [130 Cal.Rptr. 539]; *State of California* v. *Superior Court* (1983) 143 Cal.App.3d 754, 757 [192 Cal.Rptr. 198].) While this ground was not advanced in the trial court in support of the demurrer, we have already explained we may consider new questions of law on this appeal.

Plaintiff's counsel at oral argument admitted doubt about his ability to amend the complaint to cure this defect. We share that doubt, and since plaintiff has never suggested making a timely written request for a refund of building permit fees, we hold the trial court did not abuse its discretion

in sustaining the demurrer without leave to amend to plaintiff's second, fourth, and fifth causes of action seeking refund of those fees.

## VII

The judgment is affirmed.

Brauer, J., and Simmons, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.