Filed 9/21/16  P. v. Perez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTONIO TREJO PEREZ,<br><br>    Defendant and Appellant. | F070382<br><br>(Super. Ct. No. CRM030604)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.   Marc A. Garcia, Judge.

Jonathan E. Berger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Antonio Trejo Perez was charged with the attempted murder of his former landlord, but convicted of the lesser-included offense of assault with a deadly weapon. He was sentenced to 10 years in state prison. He raises various issues on appeal, including trial court error in excluding crucial evidence in violation of his constitutional right to present a complete defense and imposition of an unauthorized sentence in violation of the ex post facto clause of the federal constitution. Further, his abstract of judgment contains a clerical error and must be amended. We affirm his conviction, but order his abstract of judgment be amended.

## STATEMENT OF THE CASE

On January 13, 2014, an information filed in Merced County charged Perez with the attempted murder of Cesar Alcordo (count 1; Pen. Code,[1] §§ 187, subd. (a) & 664, subd. (a)), and assault with a deadly weapon on Olga Zarate (count 2; § 245, subd. (a)(1))[2]. With respect to both counts, the information alleged that Perez used a deadly and dangerous weapon, a pitchfork, qualifying him for a one-year sentencing enhancement (§ 12022, subd. (b)(1)). With respect to count 1, the information further alleged that Perez inflicted great bodily injury on a person over 70 years of age, qualifying Perez for a five-year sentencing enhancement (§ 12022.7, subd. (c)).

On September 12, 2014, a jury found Perez not guilty of attempted murder, but guilty of the lesser-included offense of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found true both sentencing enhancements.

On October 24, 2014, the trial court sentenced Perez to a total of 10 years in prison as follows: the aggravated term of four years for the assault; five consecutive years for

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

[2]    Count 2 was later dismissed by the prosecution before trial.

2.

the elder enhancement; and one consecutive year for a violation of probation on a prior conviction of section 245. The court further imposed a restitution fine of $2,700 and subsequently a suspended parole revocation fine also of $2,700, and a $200 fine in the probation case.

Perez timely appealed.

## STATEMENT OF FACTS

Seventy-two-year-old Cesar Alcordo was the co-owner of a 10-acre parcel in Delhi, in rural Merced County, since 1962. Perez and his wife, Olga Zarate, had rented a house on Alcordo's property for 19 years, but moved out after Perez was incarcerated for an unrelated incident and Zarate was unable to continue the rental payments. Zarate moved to Washington state. Later, while Perez was in custody, Zarate moved in with Alcordo in Modesto for several months and they began a sexual relationship.

When Perez was released, Alcordo urged Zarate to go back with Perez, which she did and they lived together in Modesto. Alcordo moved a trailer onto his property and lived there while the house, which had been trashed, was repaired. Sometime later, Zarate telephoned Alcordo and said she wanted to get away from Perez. Alcordo allowed Zarate to move back into the bedroom in the house on the property, and they resumed their relationship. About a week before the assault, Perez came to the house and demanded to speak with Zarate. An argument ensued between Perez and Zarate. Alcordo, holding a shotgun, told Perez to leave, which Perez did.

Perez returned on June 5, 2012. Alcordo was in his trailer when the door was forced open by Perez, who entered and pointed a pitchfork at Alcordo. A struggle ensued in which Perez jabbed Alcordo several times with the pitchfork and punched him multiple times in the face.

During the fight, Alcordo called to Zarate, who was inside the house, and told her to get the shotgun and to call 911. Zarate ran outside to the trailer and informed the 911 operator that Perez was attacking Alcordo with a pitchfork and that she was bleeding,

3.

after also being stabbed with the pitchfork. During the call, Perez drove off in his van and headed for Mexico. When Deputy Sheriff Lane Clark arrived on scene, he found Alcordo naked, covered in blood with a head wound, cuts to his torso, and a swollen eye. He was taken to the hospital where he received 12 staples.

Perez escaped to Mexico and was a fugitive there for over a year before being detained and arrested at the Texas-Mexico border. Perez initially told detectives he did not hit Alcordo, but later retracted that statement and admitted to punching Perez "a couple of times" and stabbing him only once with the pitchfork. Perez denied jabbing Alcordo in the head with the pitchfork, and suggested that Alcordo received his head wounds by either falling or by "[doing] it to himself."

**DISCUSSION**

I.      THE TRIAL COURT'S EXCLUSION OF ALCORDO'S POST ASSAULT STATEMENT TO POLICE ON RELEVANCE GROUNDS WAS PROPER, BASED ON THE PROFFERED TESTIMONY AND DEFENSE COUNSEL'S STATEMENT OF RELEVANCE

At trial, defense counsel proffered testimony from Alcordo regarding a statement he made to police the day after the assault, essentially to support a theory that Alcordo was the initial aggressor and defendant acted in self-defense. The trial court excluded this evidence on grounds of relevance, and Perez claims he was thus deprived of his constitutional right to present a complete defense.

On appeal, Perez now contends that the excluded evidence was proffered to challenge the credibility of Alcordo, arguing he had "profound memory and credibility problems." The record, however, shows that the proffered evidence was offered for the purpose of showing Alcordo's mental state at the time of the assault (that he thought defendant and Zarate were conspiring to assault and rob him), so he decided to strike first, thereby forcing Perez to act in self-defense. Because the proffered testimony showed that Alcordo first considered that defendant and Zarate could have been

4.

conspiring to assault and rob him *after* the assault occurred, and not before, the trial court excluded the evidence as irrelevant to Alcordo's mental state before or during the attack.

Because the trial court was only asked to consider the relevance of the evidence to Alcordo's mental state at the time of the attack, and not for issues surrounding the credibility of Alcordo's testimony, this issue was forfeited for purposes of appeal.

A. Standard of Review

"A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse" [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

B. Applicable Law

"As a general rule a party is not permitted to change its position on appeal and raise new issues not presented in the trial court. [Citation.] This is particularly true 'when the new theory depends on controverted factual questions whose relevance thereto was not made to appear' in the trial court. [Citation.]" (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959.) Forfeiture results from the failure to make a timely assertion of a right. (*People v. Simon* (2001) 25 Cal.4th 1082, 1097.)

"As a condition precedent to challenging the exclusion of proffered testimony, Evidence Code section 354, subdivision (a), requires the proponent make known to the court the 'substance, purpose, and relevance of the excluded evidence ....'" (*People v. Ramos* (1997) 15 Cal.4th 1133, 1178.)

C. Factual Analysis

While cross-examining Alcordo at trial, defense counsel began to question him about a statement he made to the police the day after the assault. The prosecution objected on hearsay grounds, and a side bar discussion was held off the record. Further questions were then asked of Alcordo outside the presence of the jury. He testified that

when he spoke with police the day after the assault, he reported that Zarate had stolen approximately $6,000 in cash and the keys to numerous vehicles from him. He also told police he suspected that the assault was part of a conspiracy between Zarate and Perez to rob him and "take everything that [he] owned." Alcordo further testified about how he found the cash several days later in a different pair of pants and had simply misplaced it, thereby proving himself wrong about the conspiracy. Alcordo denied having any thoughts or concerns about an ulterior motive or a conspiracy before the assault.

The trial court found Alcordo's speculation about a conspiracy theory only developed after the assault. The court further reasoned: "So for my reasons of potentially seeing [Alcordo's proffered testimony] as relevant, it would have been that Mr. Alcordo at the time the incident occurred had some inclination that [the conspiracy] was going on and somehow that would have factored into his behavior or motives or state of mind." Because the record is clear that defense counsel was proffering this evidence in an attempt to prove that, before the fight, Alcordo believed he was about to fall victim to a robbery conspiracy and therefore started the fight, Alcordo's proffered post assault statement to the police was properly excluded on relevancy grounds by the trial court.

Based on the above, it is apparent that Alcordo's testimony was not proffered for purposes of attacking Alcordo's credibility or competence. The court also asked defense counsel if there was another basis upon which the proffered evidence could be relevant, thereby giving defense counsel an opportunity to argue credibility, but defense counsel did not offer any additional grounds.

Because the excluded evidence was being offered at trial for a completely different purpose from the one he now asserts on appeal, Perez has forfeited this issue. (See *People v. Marks* (2003) 31 Cal.4th 197, 228 ["general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal"].)

D. <u>Any Error Would Not Have Prejudiced Perez</u>

6.

If evidentiary error occurs under California law, it must be prejudicial and requires reversal only if it is reasonably probable that a result more favorable to the appellant would have been reached had the error not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Even if the proffered testimony was improperly excluded, it is not probable that Perez would have received a more favorable result had the evidence been admitted because the other evidence against Perez was strong. Perez forced his way into the trailer uninvited and began stabbing Perez with a pitchfork, and Zarate's statements to the 911 operator corroborate Alcordo's testimony. Perez's statements to detectives, which were played for the jury, lack believability. At the beginning of the interview, Perez claims that he only wrestled with Alcordo, but then spends the rest of the interview retracting and revising his statements. Perez says that he was standing outside of the trailer while Alcordo was inside of the trailer and Zarate was outside of it. He says that Alcordo was holding the shotgun, but handed it over to Zarate and ordered her to "shoot it." Perez had no explanation for why Alcordo would hand the gun over to Zarate and order her to do such a thing. And instead of running away, Perez says he walks into the trailer uninvited to speak with Alcordo, even though he says he was being threatened with a shotgun. His account of what transpired next is impossible to determine from the record because of how much his story changes. His fleeing the scene before police arrived and escaping into Mexico also shows a consciousness of guilt. Finally, his suggestion that Alcordo's pitchfork head injuries were self-inflicted lacks credibility.

In sum, Alcordo's testimony was consistent with the physical evidence and Zarate's 911 call corroborated his account. Perez's account was inconsistent with both the physical evidence and testimony at trial. The excluded evidence reasonably would not have had an impact on the jury's determination of guilt, and we therefore hold that any alleged error was not prejudicial.

7.

## II. THE TRIAL COURT'S IMPOSITION OF RESTITUTION AND PAROLE REVOCATION FINES OF $2,700 EACH DID NOT VIOLATE THE EX POST FACTO CLAUSE

At sentencing, the trial court imposed a restitution fine of $2,700 pursuant to section 1202.4, subdivision (b) and imposed, but stayed, a parole revocation fine of $2,700 pursuant to section 1202.45, subdivision (a). Assuming that the trial court was using the 2014 (when sentencing occurred) statutory minimum base fine of $300 to calculate the $2,700 fines, and not the 2012 (when the offense occurred) statutory minimum of $240, defendant argues that the trial court's imposition of the $2,700 fines violates the ex post facto clause of the federal constitution.[3]

This claim is misplaced. An ex post facto law is a retrospective criminal statute applied to a crime committed before its enactment, such as increasing punishment beyond what was authorized when the crime is committed. (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Introduction to Crimes, § 16, pp. 34-35.) This is not what occurred here. Neither the probation report nor the oral pronouncement of sentence indicates what formula or what version of section 1202.4 the trial court used to calculate the restitution and probation revocation fines. The version of section 1202.4, subdivision (b) that was in effect at the time appellant committed his crime in 2012 provided that the court could impose a restitution fine of no less than $240 and no more than $10,000. (See § 1202.4, subd. (b)(1) ["the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012"].) As appellant admits, the formula provided in both the former and current section 1202.4, subdivision (b)(2) for calculating the amount of the restitution fine is merely suggested, not mandatory. Under the statute, all the trial court was required to do was impose a restitution fine between $240 and $10,000. How the court calculated the amount of the fine is of no consequence and is impossible to determine on

---

[3] Probation revocation fines pursuant to section 1202.45 are imposed at the same rate as calculated for restitution fines under section 1202.4. (§ 1202.45, subd. (a).)

this record.  Thus, imposition of a $2,700 restitution fine and a $2,700 parole fine (stayed) was a proper exercise of discretion as they fell within the 2012 statutory range of section 1202.4.  Further, because the trial court properly exercised its discretion, defense counsel was not ineffective for failing to object, and that claim also fails.

III.    PEREZ'S ABSTRACT OF JUDGMENT SHOULD BE AMENDED TO REFLECT THAT HIS 2011 CONVICTION WAS FOR A "SOFT 245"

Perez argues that the abstract of judgment must to be amended because it incorrectly reflects that his prior 2011 conviction, for which he was on probation at the time he committed the current offense, was for assault with a deadly weapon, rather than assault by means likely to produce great bodily harm.  Respondent agrees and so do we.

Generally, a clerical error is one inadvertently made.  (*People v. Schultz* (1965) 238 Cal.App.2d 804, 808.)  A court "has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.  [Citations.]" (*In re Candelario* (1970) 3 Cal.3d 702, 705.)

Prior to 2012, section 245, subdivision (a)(1), encapsulated both assault with a deadly weapon and assault by means likely to produce great bodily injury.  However, a conviction of the former constituted a strike while a conviction of the latter did not. (*People v. Williams* (1990) 222 Cal.App.3d 911, 914 ["When the section 245, subdivision (a)(1) violation is based on an assault 'by any means likely to produce great bodily injury' it does not come within section 1192.7, subdivision (c)(23)," and is therefore not a serious felony.])

At Perez's sentencing, the court indicated on the record that the 2011 conviction was for assault by means likely to inflict great bodily injury, a so-called "soft 245" because, unlike assault with a deadly weapon, it does not rise to the level of a serious or violent felony for purposes of three strikes law.  Also, the probation report described the prior conviction as "Assault By Means Likely To Produce GBI."  However, the abstract of judgment indicates that both convictions, the one of which he was convicted at trial

9.

and the other one for which he was on probation for, were both for "Assault W/ Deadly Weapon."  As Perez correctly points out, there is no way to tell by looking at the abstract of judgment that one offense was a strike and the other was not.  Therefore, the abstract of judgment must be amended.

## DISPOSITION

Perez's abstract of judgment is to be amended to reflect that his 2011 conviction was for assault by means of force likely to produce great bodily injury.  The trial court is ordered to prepare an amended abstract of judgment reflecting this modification and send certified copies to all necessary parties.  All other aspects of the appeal are affirmed.


_____
FRANSON, J.
WE CONCUR:


_____
HILL, P.J.


_____
SMITH, J.

10.