[No. H001010. Sixth Dist. Feb. 18, 1987.]

FINANCIAL CORPORATION OF AMERICA et al., Plaintiffs and Appellants, v.
WILLIAM K. WILBURN, Defendant and Respondent.

COUNSEL

Jeffer, Mangels & Butler, Robert E. Mangels, William F. Abrams and Patricia S. Brody for Plaintiffs and Appellants.

William K. Wilburn, in pro. per., for Defendant and Respondent.

OPINION

AGLIANO, P. J.—

I

Plaintiffs appeal from a judgment entered after defendant's general demurrer was sustained without leave to amend to their second amended complaint. At issue is the scope of the privilege afforded to publications and statements made by an attorney about an adversary prior to and in litigation.

We review a general demurrer under well-established principles. ■ It presents the question of law whether the complaint, liberally construed, contains facts sufficient to entitle plaintiff to any relief. (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 952-953, 959 [230 Cal.Rptr. 192].) ■ "[W]e assume the truth of all material facts properly

pleaded in the complaint unless they are contradicted by facts judicially noticed [citations], but no such credit is given to pleaded contentions or legal conclusions. [Citations.] Specific factual allegations modify and limit inconsistent general statements." (*Id.,* at p. 953.)

## II

### A. *Procedure*

Plaintiffs' original complaint was filed July 2, 1984. After demurrer was twice sustained with leave to amend, plaintiffs Financial Corporation of America and American Savings and Loan Association filed their second amended complaint on February 20, 1985. After a hearing on June 12, 1985, the court sustained the demurrer of defendant William Wilburn without leave to amend. Plaintiffs purport to appeal from the order entered on June 12 sustaining the demurrer and from the subsequent order of July 29 denying plaintiffs' motion for clarification or reconsideration of the June 12 order.

As defendant points out, an order sustaining a demurrer can only be reviewed on appeal from a subsequent judgment or order of dismissal and is not separately appealable. (*Cornic* v. *Stewart* (1918) 179 Cal. 242 [176 P. 164]; *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 651 [150 Cal.Rptr. 242, 586 P.2d 556].) An order denying reconsideration of such a nonappealable order is not itself appealable either. (*Genis* v. *Krasne* (1956) 47 Cal.2d 241, 249 [302 P.2d 289]; *I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682].) The notice of appeal filed on August 7, 1985, does not refer to the judgment entered on July 9 sustaining defendant's demurrer. There is no indication this judgment was served on plaintiffs, however, nor was it brought to their attention by defendant in later opposing the motion for reconsideration. Though the notice of appeal refers to orders on different dates, we liberally construe it as from the judgment, when no one could have been misled that plaintiffs sought appellate review of the ruling on the demurrer, and the issues are fully briefed by both sides. (Cal. Rules of Court, rule 1(a); *Collins* v. *City & Co. of S. F.* (1952) 112 Cal.App.2d 719, 722-723 [247 P.2d 362]; *Vibert* v. *Berger* (1966) 64 Cal.2d 65 [48 Cal.Rptr. 886, 410 P.2d 390].)

### B. *The Complaint*

The second amended complaint seeks actual and punitive damages from William Wilburn, an attorney, based on his activities, summarized as follows (with the alleging paragraph cited): He has made false accusations against plaintiffs, charging them with narcotics trafficking, obstructing justice, bribery, and deceptive and dishonest loan, accounting and other business

practices. (¶¶ 6, 7.) He made these accusations in an action he filed on behalf of clients against plaintiffs and others, including certain of their officers, in United States District Court for the Northern District of California, *Katen, et al.* v. *State Savings and Loan Association, et al.* (No. C 84 20402 WAI) on June 22, 1984. (¶ 7.) The federal action purports to seek relief under the RICO, the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. 1961 et seq.; which provides in § 1964 subd. (c), for recovery of treble damages and attorney's fees) as well as other federal and state law causes of action. (¶ 7.) He also made these accusations before filing the federal action in March, April, May and June, 1984, (1) to "persons throughout Northern California," and (2) to plaintiffs' present and former employees, depositors, investors, and customers, from whom he sought confidential information. (¶ 6.)

Plaintiffs also complain defendant has threatened them with litigation, not only the federal action but other lawsuits, unless they make substantial payments to him. (¶ 14.) Plaintiffs also complain defendant filed and is maintaining the federal action. (¶¶ 7, 10, 15, 19.)

Defendant engaged in these activities knowing the accusations were false, that they would receive attention from and be republished by the news media,[1] and that they were damaging to plaintiffs by virtue of the nature of their businesses, namely plaintiff Financial Corporation of America being a publicly traded corporation and the parent corporation of plaintiff American Savings and Loan Association (formerly State Savings and Loan), the largest savings and loan association in the country. (¶¶ 10, 11, 12, 14.) The purpose behind all these activities is to have these accusations republished in the news media, to interfere with plaintiffs' existing and prospective business with depositors, investors, and customers, and to otherwise damage plaintiffs' businesses, and thereby to extort substantial money and property from plaintiffs as the price for ceasing. (¶¶ 10, 13, 14, 19.) The sole purpose of filing the federal action is not to obtain the relief requested, but to shield these activities and future republications under the protective umbrella of privilege. (¶¶ 15, 20.)

Plaintiffs' first cause of action is for intentional interference with economic advantage and the second is for abuse of process.

### III

A. *Scope and Limits of Privilege for Statements Made in Course of Judicial Proceedings*

---

[1]We see no allegation that defendant "supplied [the complaint] to the news media to be republished to the public" other than in plaintiffs' briefs.

By statute an action for defamation cannot be predicated on certain privileged oral or written statements. "A privileged publication or broadcast is one made ... 2. In any ... (2) judicial proceeding ...." (Civ. Code, § 47.) "[T]he obvious purpose of section 47 [is] to afford litigants the utmost freedom of access to the courts to secure and defend their rights without fear of being harassed by actions for defamation." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 380 [295 P.2d 405].)

*Albertson* established that this privilege was also a defense to a claim of disparagement of title. (*Id.,* at pp. 378-379.) As more fully explained in *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 99 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]: "The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint." Privileged statements are similarly not actionable on theories of abuse of process (*Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 924-926 [134 Cal.Rptr. 145]; see *Thornton, supra,* at pp. 99-100), interference with economic advantage (*Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 738 [151 Cal.Rptr. 206], cert. den. 444 U.S. 844; [62 L.Ed.2d 57, 100 S.Ct. 87]; *Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121, 128 [185 Cal.Rptr. 92]), or a variety of other theories (see cases cited in *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 391 [182 Cal.Rptr. 438]). The only cause of action not subject to the privilege is malicious prosecution, because "[t]he policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (*Albertson, supra,* 46 Cal.2d 375, 382.)

This privilege is absolute in that it applies regardless of whether a statement was uttered with malice or bad faith. (*Gosewisch* v. *Doran* (1911) 161 Cal. 511, 514 [119 P. 656]; *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 93; *Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254, 265 [163 Cal.Rptr. 689].) However, its applicability depends on whether the statement was "made in" a "judicial proceeding." *Albertson, supra,* 46 Cal.2d 375, faced the question whether a notice of lis pendens was privileged. The court determined the privilege should be given a broad application in view of its underlying policy, holding: "It is our opinion that the privilege applies to any publication, such as the recordation of a notice of *lis pendens,* that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. [Citation.] Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits. If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches." (*Id.,* at pp. 380-381.) The court supported this expansive reading

of the statutory privilege by reference to common-law absolute privileges described in the Restatement of Torts sections 585-589 which protect certain actors in judicial proceedings against defamation actions. (*Id.,* at pp. 378, 381.)

In *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, Justice Kaus thoughtfully elaborated on the nature of the connection which must exist between a statement and a judicial proceeding for the statement to be privileged. "A rule which requires the demonstration of some connection with the proceedings, yet dispenses with the requirement of relevancy, materiality or pertinency, in their technical sense appears to us not only to be a fair compromise between the competing considerations involved, but to be the one adopted by the Restatement of Torts . . . . The test, as formulated by the Restatement appears to be purposely couched in nontechnical legal language: does the utterance have 'some relation' to the judicial proceeding? This is the language used by the authors of the Restatement with respect to the privilege of judicial officers (§ 585), attorneys (§ 586), parties (§ 587), witnesses (§ 588) and jurors (§ 589). It seems to us a very workable test, though like any other not without its problems in fringe areas." (*Id.,* at p. 90.) " 'At all events, it is held that doubts are to be resolved in favor of relevancy and pertinency; that is to say, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that there can be no reasonable doubt of its impropriety.' [Citation.]" (*Id.,* at p. 93.)

*Thornton* applied this test to determine that the deposition testimony of a witness about the reputation and conduct of a party to litigation and its transcription, which was filed with the court, were privileged, because the party's character and conduct might become an issue in the case. Cases following *Thornton* are cited in *Izzi* v. *Rellas, supra,* 104 Cal.App.3d 254, 262, for the proposition: "California courts have consistently applied a liberal standard for establishing a relationship between publications made by parties and judicial proceedings."

*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818 [106 Cal.Rptr. 718], introduced a restrictive view of the privilege into California case law. Relying on foreign precedent, the court stated that application of the privilege should be narrowly confined to cases where its underlying policy required immunity. (*Id.,* at pp. 823-824.) The court interpreted existing California precedent and the Restatement categories as sketching the outermost boundaries for application of the privilege (*id.,* at pp. 824-825), and concluded: "[A]bsolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action;

(3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." (*Id.,* at p. 825.) The third condition was further refined by the court, which underlined "*the requirement that* [the publication] *be made in furtherance of the litigation and to promote the interest of justice.*" (*Id.,* at p. 826.) While the meaning of this latter statement has been questioned (*O'Neil* v. *Cunningham* (1981) 118 Cal.App.3d 466, 475 [173 Cal.Rptr. 422]), these conditions have been adopted in a number of cases. (E.g., *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 301 [113 Cal.Rptr. 113]; *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 284 [175 Cal.Rptr. 767]; cf. *Barbary Coast Furniture Co.* v. *Sjolie* (1985) 167 Cal.App.3d 319, 334 [213 Cal.Rptr. 168].)

These general principles have been applied to publications by an attorney. California has adopted as an elaboration of the privilege section 586 of the Second Restatement of Torts. ■ " 'An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.' " (*Larmour* v. *Campanale* (1979) 96 Cal.App.3d 566, 569, fn. 2 [158 Cal.Rptr. 143]; § 586 of the original Restatement, previously adopted in *Friedman* v. *Knecht* (1967) 248 Cal.App.2d 455, 460 [56 Cal.Rptr. 540], differs insignificantly.)

California has further adopted these comments explanatory of section 586. "It [the privilege] protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." (*Com. a; Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 93.) "The privilege . . . is confined to statements made by an attorney while performing his function as such. . . . [T]he privilege does not cover the attorney's publication of defamatory matter that has no connection whatever with the litigation." (*Com. c; Larmour* v. *Campanale, supra,* 96 Cal.App.3d at p. 569, fn. 2.) "As to communications preliminary to a proposed judicial proceeding the rule . . . applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." (*Com. e; Herzog* v. *"A" Company, Inc.* (1982) 138 Cal.App.3d 656, 661-662 [188 Cal.Rptr. 155].)

B. *The Law Applied to the Alleged Facts*

The dispute between plaintiffs and defendant is fueled by the tension in the law between liberal and restrictive applications of the privilege.

Plaintiffs generally divide defendant's conduct into two categories—that preceding the filing of the federal action and that involved in institution of the action.[2] They do not distinguish the mechanics of filing a legal complaint from the statements contained therein, and rightly so. ■ The acts involved in filing a formal legal complaint, e.g., its transcription, transportation and presentation, are all part of its publication, and are privileged to the extent its contents are privileged. (Cf. *Brody* v. *Montalbano, supra,* 87 Cal.App.3d 725, 734-735; *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 91.) Plaintiffs do, however, contend that the allegations of the complaint are not privileged.

### 1. *The Filing of the Federal Action*

■ Plaintiffs contend the allegations of the complaint are not privileged because defendant filed the complaint not to pursue available legal remedies but simply in order to take advantage of the privilege and harass plaintiffs without fear of liability for accusations defendant knew were groundless. They rely heavily on *Bradley, supra,* 30 Cal.App.3d 818. There defendants had allegedly caused to be filed in two courts "certain extrajudicial documents, not appropriately a part" of any pending proceedings "for the sole purpose of having the defamatory statements contained therein quoted and republished by the ... news media." (*Id.,* at p. 822.) Applying the restrictive conditions it devised for the occasion, that court found on review of a demurrer the publications outside the privilege. The court acknowledged there was some relationship between the documents and a pending action, but held that more was required. "[T]here is nothing contained in the pleadings to suggest that the publication was made to achieve the objects of the litigation. On the contrary, it affirmatively appears in the Complaints [*sic*] that the documents in question were filed as a part of a conspiracy for the sole purpose of having the defamations contained therein republished by the news media, that is, to bring the defamatory matter within the protective shield of the absolute privilege and then to spread it with impunity. It is easily discernible what result would ensue should we condone such an apparent ruse by providing absolute immunity to the resourceful slanderer." (*Id.,* at p. 826.)

*Bradley* does not discuss whether allegations in a formal complaint initiating a lawsuit could ever fall outside the privilege, and it is distinguishable because it involved "extrajudicial" documents, the filing of which was apparently not an authorized legal procedure.

---

[2]We are not asked to determine whether defendant's "maintaining" of the action is privileged, and the vagueness of that term precludes understanding whether it involves any more than repeating the accusations which are in issue.

There are cases which consider whether all allegations in a complaint are necessarily privileged. In *Umansky* v. *Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547] (cited in the trial court, but not on appeal), a doctor complained that the attorneys in the underlying action presented a wrongful death complaint which impermissibly sought punitive damages from him. After the punitive damages claim was removed by stipulation, he brought suit, alleging the claim was made to embarrass him and injure his reputation and to pressure him into settlement. (*Id.,* at p. 370.) The court found the punitive damages claim privileged under a liberal construction of the privilege, reasoning it was permissible for lawyers to challenge the existing state of the law, as such a claim would have done. (*Id.,* at pp. 371, 372.)

Prior to *Umansky,* with almost no analysis, the filing of a small claims suit was held privileged in *117 Sales Corp.* v. *Olsen* (1978) 80 Cal.App.3d 645, 651 [145 Cal.Rptr. 778]. *Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832, 841-842 [184 Cal.Rptr. 317, 30 A.L.R.4th 561], cited *Umansky* in strong dictum indicating that the filing of a petition for a writ of mandate was a privileged publication. *Drasin* v. *Jacoby & Meyers* (1984) 150 Cal.App.3d 481, 485 [197 Cal.Rptr. 768], cited *Asia Investment Co.* for the proposition "the filing of a complaint has been held to be privileged, in the context of an abuse of process proceeding, under Civil Code section 47, subdivision 2." Both cases concerned whether leave to amend complaints should have been granted and also gave other reasons for upholding the trial court denials.

In *Williams* v. *Coombs* (1986) 179 Cal.App.3d 626 [224 Cal.Rptr. 865], a doctor sued a lawyer for intentionally inflicting emotional distress by filing and maintaining a prior action falsely charging the doctor with medical malpractice. While the doctor had a potential malicious prosecution claim, the privilege defeated recovery on this other theory. The court, citing *Asia Investment Co.,* applied the privilege because the sole conduct asserted was making the statement, true or false, in a judicial proceeding. (*Id.,* at p. 645.)

Cases deciding whether the filing of various discovery documents was privileged also provide some guidance. *Thornton* v. *Rhoden* has already been discussed. It did not apply the *Bradley* test which was subsequently formulated, but in deciding whether there was some relation between objectionable discovery statements and the litigation, the court stated: "We look at the pleading which the trial court found wanting and ask whether—resolving all doubts in favor of the privilege—the 'relation' can be demonstrated." (*Thornton, supra,* 245 Cal.App.2d 80, 93.)

Later cases follow the same approach. In *Younger* v. *Solomon, supra,* 38 Cal.App.3d 289, the court determined that a questionable interrogatory was

privileged insofar as it referred to incidents involving other individuals which were similar to the "ambulance-chasing" conduct complained of in the underlying action. Such charges were relevant to the punitive damages claim of a client who claimed an attorney had fraudulently solicited her. On the other hand, the interrogatory also revealed that local attorneys had filed a complaint against that attorney with the State Bar. This statement was not privileged because it had "no logical relation or connection with" the underlying action. (*Id.*, at p. 301.) In *Twyford v. Twyford, supra,* 63 Cal.App.3d 916, the court found privileged a request that a party admit stealing funds during a contempt proceeding following a dissolution. It related to the contempt proceeding in two ways, though it described conduct which was not the subject of the proceeding. It could have shown another violation of a court order, justifying an amendment of the order to show cause, or it could have shown how that party would have been able to pay if found in contempt.

From this precedent we distill these principles. A document is not privileged merely because it has been filed with a court or in an action. The privileged status of a particular statement therein depends on its relationship to an actual or potential issue in an underlying action. Courts respect the absolute aspect of the privilege by considering a statement's apparent or ostensible connection to the underlying action, without exploring the writer's actual, subjective intent or purpose. *Umansky, supra,* 84 Cal.App.3d 368, if not its progeny, shows that a court, in ascertaining application of the privilege, may have to examine whether statements in a complaint bear some relation to the action initiated by the same document. Analysis of which statements in a pleading are privileged applies looser standards of relevance than a motion to strike irrelevant or immaterial matter. (See Code Civ. Proc., § 436, subd. (a); Fed. Rules Civ. Proc., rule 12(f), 28 U.S.C.)

 Plaintiffs do not identify a single allegation in the federal complaint[3] as apparently unrelated to the litigation it commenced. They concede defendant's contention that narcotics trafficking, bribery, and obstruction of justice are among the offenses listed in 18 United States Code section 1961(1), as possible predicates for alleging "a pattern of racketeering activity," an element of a civil cause of action under the Racketeer Influenced and Corrupt Organizations Act. (*Sedima, S. P. R. L. v. Imrex Co., Inc.* (1985) 473 U.S. 479, 495 [87 L.Ed.2d 346, 358, 105 S.Ct. 3275, 3285].) Plaintiffs thus concede there is nothing on the face of the federal complaint to show any of its allegations are not related to the action or made in furtherance of it.

---

[3]We judicially notice the complaint in the federal action, which plaintiffs made a part of the record in this action in opposing defendant's original demurrer. (Evid. Code, §§ 452, subd. (d), 459.)

Plaintiffs err in arguing the privilege can be stripped from a defendant who did not really mean what he said. They misunderstand *Bradley* as authorizing judicial examination of "the defendant's motive or intent in determining whether the privilege . . . applies." That court acknowledged the privilege was not lost due to actual malice. (*Bradley, supra,* 30 Cal.App.3d at p. 824.) While the opinion discusses the purpose of the publication, a close reading shows that the court was bound to accept allegations of such purpose on demurrer when no other purpose appeared from the complaint. *Bradley* relied on this apparent purpose of the statements, as well as their "extrajudicial" nature and other factors, to determine they were not aimed at the object of the litigation. While the instant case also arises on demurrer, unlike the *Bradley* court, we are not limited to a complaint's characterization of the apparent lack of relationship between the objectionable statements and the object of the underlying action, since plaintiffs have also provided the actual statements for judicial notice.

Plaintiffs' premise is that the subjective intent, purpose, or knowledge of a writer can destroy the privileged status of otherwise privileged statements. The law is otherwise.

2. *Activities Before Filing the Federal Action*

Plaintiffs argue all of defendant's activities before filing the federal action are not privileged. We perceive three types of prelitigation statements alleged which are analytically distinct.

First, plaintiffs allege defendant threatened them with litigation unless they made payments to him. It is established that demands to resolve disputes made in anticipation of litigation are privileged (*Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 577-579 [131 Cal.Rptr. 592]; *Larmour* v. *Campanale, supra,* 96 Cal.App.3d 566, 568-569) so long as litigation is seriously anticipated in good faith. (*Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408, 421-422 [225 Cal.Rptr. 140]; see Annot. (1983) 23 A.L.R. 4th 932.) California has adopted the view of the Second Restatement of Torts that the speaker's or writer's actual good faith contemplation of litigation is required to establish the privilege for prelitigation statements. (*Fuhrman, supra,* 179 Cal.App.3d 422, fn. 5.) If this state of mind exists, a groundless statement is privileged. But despite other allegations of bad faith, plaintiffs have not alleged the requisite bad faith to make these demands or threats lose their apparent privilege.

Second, the complaint alleges defendant made the above-described accusations to plaintiffs' present and former employees, depositors, investors, and customers, from whom he sought confidential information. "[T]he

absolute privilege in ... judicial ... proceedings extends to preliminary conversations and interviews between a prospective witness and an attorney if they are some way related to or connected with a pending or contemplated action." (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656].) While *Ascherman* applied the privilege in favor of a prospective witness, it applies equally to the investigating attorney. (Cf. *Lebbos* v. *State Bar* (1985) 165 Cal.App.3d 656, 668-669 [211 Cal.Rptr. 847].) To the extent defendant made these statements to prospective witnesses while gathering evidence in good faith, serious contemplation of litigation, they are privileged. Again, plaintiffs have not alleged that defendant did not seriously or in good faith anticipate legal proceedings while making these statements.

We turn to the third type of prelitigation statements allegedly made by defendant. As plaintiffs properly point out, they alleged defendant made the above-described accusations to "persons throughout Northern California." We must accept this allegation as true for purposes of demurrer, and disregard defendant's contention that the statements were made only to his clients and other potential witnesses. Without speculating on the circumstances surrounding the making of a statement on any particular occasion, we generally observe an attorney will not "be protected by the absolute privilege as to actionable words spoken before persons in no way connected with the proceeding [citations]." (*Bradley, supra,* 30 Cal.App.3d 818, 827.) The possible relationship of a listener or reader to anticipated litigation may determine whether the statement had some relation to it.

The trial court abused its discretion in sustaining the general demurrer. While much of plaintiffs' complaint describes privileged statements made by defendant, a defendant cannot demur generally to part of a cause of action. (*Lord* v. *Garland* (1946) 27 Cal.2d 840, 853 [168 P.2d 5]; cf. *Reed* v. *Drais* (1885) 67 Cal. 491, 491-492 [8 P. 20].) There are some alleged statements which are not apparently privileged, so a cause of action is stated. We have demarcated which alleged statements are privileged to provide guidance and focus for further proceedings. We do not, however, foreclose further amendment of pleadings or proof in order to establish the privilege does not apply as to these statements.

IV

The judgment is reversed for further proceedings consistent with this opinion. (This necessarily disposes of defendant's request for sanctions on the basis the appeal is frivolous.) Each side to bear its own costs on appeal.

Brauer, J., and Capaccioli, J., concurred.