[No. B065906. Second Dist., Div. Two. Dec. 1, 1992.]

BABETTE J. SPITLER, Plaintiff and Appellant, v.
CHILDREN'S INSTITUTE INTERNATIONAL et al., Defendants and Respondents.

**COUNSEL**

William H. Waysman, Eliseo D. W. Gauna and Deborah Cummis for Plaintiff and Appellant.

O'Melveny & Myers, Charles P. Diamond and Gregory N. Albright for Defendants and Respondents.

**OPINION**

**LORD, J.*—**

*Introduction*

In this appeal we again review the claims of plaintiff Babette J. Spitler, one of the original defendants in the McMartin Preschool child molestation prosecution, against Children's Institute International (CII) and Kathleen "Kee" MacFarlane (MacFarlane), the child care professionals who interviewed the McMartin preschool children at the behest of the Los Angeles

*Judge of the Municipal Court for the Downey Judicial District sitting under assignment by the Chairperson of the Judicial Council.

District Attorney's Office. The trial court granted CII and MacFarlane's motion for summary judgment, ruling that each of four statements identified as defamatory by plaintiff in the discovery process was either privileged, protected opinion, not "of or concerning" plaintiff, and/or barred by the statute of limitations. The court also denied plaintiff's request for additional discovery pursuant to Code of Civil Procedure section 437c, subdivision (h). This appeal follows.

*Facts*

Plaintiff, a teacher at the McMartin Preschool in Manhattan Beach, was indicted by the Los Angeles County Grand Jury on March 22, 1984, for allegedly participating in the molestation of numerous children attending the preschool. After an 18-month preliminary hearing, plaintiff and 6 codefendants were bound over for trial. Ira Reiner, the then newly elected district attorney, dismissed charges against plaintiff and four of her codefendants on January 17, 1986.

On June 12, 1986, plaintiff, together with her husband and two minor children, commenced this action against CII, MacFarlane, the County of Los Angeles, the City of Manhattan Beach, Astrid Heger, Bruce Woodling, Robert Philibosian, Wayne Satz, and ABC Television, Inc. The complaint asserted causes of action against CII and MacFarlane for conspiracy to violate civil rights, the Racketeer Influenced and Corrupt Organizations Act, defamation, invasion of privacy, intentional and negligent infliction of emotional distress, outrageous conduct and declaratory relief. Through a succession of demurrers, reviewed by this court in an opinion issued February 28, 1990, plaintiff's husband and children were dismissed and her action was reduced to a single claim for defamation.

After her second amended complaint was found deficient for failing to plead the defamatory statements (or the circumstances allegedly making them nonprivileged) with the specificity required by this court's decision, plaintiff alleged in her third amended complaint "a social and romantic relationship" between MacFarlane and ABC broadcast journalist Wayne Satz, from which emerged the "same defamatory statements" allegedly made during three different time periods: (1) prior to the initiation of criminal charges against plaintiff; (2) during the course of the criminal proceedings; and (3) after criminal charges against plaintiff had been dismissed. Upon CII and MacFarlane's motion, the trial court struck the allegations concerning defamatory statements made during the course of criminal proceedings.

In response to interrogatories and document requests asking plaintiff to identify all statements made by CII or MacFarlane which purportedly defamed her, plaintiff proffered the following four statements: (1) testimony

MacFarlane gave before a United States congressional subcommittee investigating the nationwide incidence of child abuse;[1] (2) statements made during interviews of the McMartin preschoolers; (3) a statement attributed to Dr. Astrid Heger, a medical consultant to CII, and published in Los Angeles magazine;[2] and (4) comments MacFarlane made to the press following dismissal of charges against plaintiff and four of her codefendants.[3] Contending that none of these statements was actionable, CII and MacFarlane moved the trial court for summary judgment or, in the alternative, for summary adjudication as to each statement. The court granted the motion, finding that each statement was either privileged, barred by the statute of limitations, protected opinion and/or not "of and concerning" plaintiff. The court also denied plaintiff's request for a continuance to conduct further discovery, and denied plaintiff's request for leave to amend to add allegations regarding her alleged belated discovery of defamatory statements as a basis for tolling the statute of limitations.

*Contentions*

The following questions are thus presented for review: (1) Did the trial court abuse its discretion in striking the allegations concerning defamatory

[1]Following is a typical excerpt from MacFarlane's extensive congressional testimony: "What we are dealing with, and I have no idea how widespread it is, I have no idea of how much Federal attention it merits, but I think you need to know that I believe we are dealing with no less than conspiracies in these cases, organized operations of child predators, whose operation is designed to prevent detection, and is well insulated against legal intervention. [¶] Preschools in this country in some instances I think we must realize have become a ruse for larger unthinkable networks of crimes against children. [¶] If pornography and prostitution are involved, which is sometimes the case, those networks may have greater financial, legal, and community resources than any of the agencies trying to uncover them."

[2]The relevant portion of this article reads as follows: "Their investigation was hitting dead ends, and to move it along, Matusinka, MacFarlane and Dr. Astrid Heger, CII's medical consultant, organized group meetings of five or six McMartin parents to try to persuade them to send their children to CII to be interviewed by MacFarlane. Although frightened and confused, the parents were reluctant to submit their children to a process they knew little about, but soon they agreed. A member of one of the groups later told a defense investigator that Heger admonished the parents: 'You've got to accept it. If your children went to McMartin, they were probably abused.' "

[3]The relevant portions of the Easy Reader article read as follows: "CII child abuse therapist Kee MacFarlane . . . called her own reaction to the dismissals 'unprintable.' [¶] 'I support the parents in any way I can,' she added, saying the children 'are going to feel very betrayed—and they're not the only ones.' [¶] 'Reiner has gone much further than he needed to,' MacFarlane said. 'He doesn't believe what hundreds of children are saying. . . . He must have an alternate theory and he won't talk about that.' [¶] MacFarlane said she loathed the upcoming trial and guessed that it would probably be condensed to 'a war' between doctors testifying on both sides of the medical evidence. [¶] 'What we've got is pictures of the scars. I think they're going to have to have an explanation for what those scars are.' [¶] With the dismissals, the case 'is whittled down to 13 kids (as witnesses) and two defendants . . . and ignores hundreds of children who never retracted anything,' MacFarlane said. 'Do we have to wait until they're 25 years old? Will we even believe them then?' "

statements made by MacFarlane to Satz during the course of criminal proceedings? (2) Did the court properly determine that none of the four allegedly defamatory statements was actionable because either privileged, barred by the statute of limitations, protected opinion or not "of and concerning" plaintiff? (3) Did the court abuse its discretion in denying plaintiff's request for leave to amend to add allegations regarding her belated discovery of defamatory statements for purposes of tolling the statute of limitations?

*Discussion*

I

MacFarlane testified extensively at the preliminary hearing, implicating plaintiff in molestation of McMartin preschoolers. Plaintiff believes that this testimony was false, perjurious and defamatory. She acknowledges, however, that because these statements were given as testimony in a judicial proceeding, they are absolutely privileged under Civil Code section 47, subdivision (b)(2).[4] In her third amended complaint, plaintiff added allegations that MacFarlane "previewed" her preliminary hearing testimony to Satz, who then "coached" her in delivering that testimony at the preliminary hearing. Because this communication between MacFarlane and Satz was not made "in any judicial proceeding," plaintiff contends that it was not privileged, and the trial court therefore abused its discretion in striking the allegation.

The Supreme Court recently enunciated the "test" for application of section 47(b) as follows: "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg* v. *Anderson, supra,* 50 Cal.3d 205, 212.) It appears from plaintiff's briefs that she challenges the first prong of this test (that MacFarlane's statements to Satz were made in a judicial proceeding) since she emphasizes that they were made "*before* [MacFarlane's] testimony." However, there can be no doubt that the communications were made in a judicial

[4]Civil Code section 47, subdivision (b) provides in pertinent part: "A privileged publication or broadcast is one made—. . . [¶] (b) In any (1) legislative or (2) judicial proceeding . . . ." All further statutory references are to the Civil Code unless otherwise indicated. For convenience, we will refer to section 47, subdivision b, as section 47(b).

The breadth of the absolute privilege is evident from the fact that, while it was originally available only to defendants in defamation actions, it has more recently been construed to apply to actions for abuse of process, intentional and negligent infliction of emotional distress, intentional interference with prospective economic advantage, invasion of privacy, negligence and fraud. (See *Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 215 [266 Cal.Rptr. 638, 786 P.2d 365], and cases cited therein.)

proceeding, for "the privilege is not limited to statements made *during* a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards, provided they have some relation to it." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 505, p. 591; see also, *Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212 [the privilege applies "even though the publication is made outside the courtroom and no function of the court or its officers is involved"].) Were this not the rule, it would undermine the vital purpose effectuated by the litigation privilege, "to afford litigants and witnesses [citation omitted] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Id.* at p. 213.)

Plaintiff does not specifically assert that the purported statements fail to meet the remaining prongs of the test. In any case, they in fact do meet the requirements set forth in *Silberg*. As a principal witness in the preliminary hearing, MacFarlane was clearly "a participant authorized by law." And since the substance of the allegation was that MacFarlane rehearsed her testimony with Satz, plaintiff can make no claim that there was no connection or logical relation between the defamatory statements and the judicial proceeding. Finally, as the *Silberg* court noted, "[t]he requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action. . . . The 'furtherance' requirement was never intended as a test of a participant's motives, morals, ethics or intent." (50 Cal.3d at pp. 219-220.) Therefore, the alleged statements meet the *Silberg* test, and are thereby privileged.

Since the absolute privilege of section 47(b) applied to the alleged defamatory statements of MacFarlane made to Satz during the course of the preliminary hearing, the trial court did not abuse its discretion in striking those allegations from the complaint.

II

We next turn to the court's order granting summary judgment in favor of CII and MacFarlane. ■ Summary judgment is appropriate where the record establishes as a matter of law that no material disputed issue of fact exists or that the cause of action cannot prevail. (*Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1224 [261 Cal.Rptr. 185].) Because the motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, this court will make its own independent determination of the questions of law raised in the motion. (*Slivinsky* v. *Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799, 803-804 [270 Cal.Rptr.

585]; *Wilkerson* v. *Wells Fargo Bank, supra*, at p. 1225.) Applying the foregoing standard, we find the trial court properly granted CII and MacFarlane's motion for summary judgment.

Because the judgment will be upheld if correct on any legal theory (see 9 Witkin, Cal. Procedure (9th ed. 1985) Appeal, § 259, p. 266, and cases cited therein), we review below each of the allegedly defamatory statements to determine if it is not actionable because privileged, barred by the statute of limitations, protected opinion, or not "of and concerning" plaintiff.

*MacFarlane's Congressional Testimony*

The privilege set forth in section 47(b) applies to "any" legislative proceeding. The use of the term "any" necessarily requires that its application be construed broadly and it certainly applies to congressional testimony. Plaintiff does not argue otherwise. She seems to contend, however, that the *republication* of MacFarlane's testimony in the local press, which in certain respects inaccurately reported the original testimony, was itself defamatory. In order to establish a cause of action against the defendants based on republication of an originally privileged communication, the plaintiff must allege that the republication was authorized, consented to, or participated in, by the defendants. If the privileged statements are changed in the republication, then the plaintiff must allege that the defendants authorized, consented to, or participated in the publication of the article *as changed*. (*Montandon* v. *Cox Broadcasting Corp.* (1975) 45 Cal.App.3d 932, 937 [120 Cal.Rptr. 196].) MacFarlane denies so doing, and plaintiff submits no evidence to contradict MacFarlane (and indeed does not even allege that MacFarlane consented to or participated in the republication). Therefore, no issue of fact exists for determination at trial regarding these statements.

*Communications With McMartin Children During CII's Diagnostic Interviews*

As this court ruled in its prior opinion in this case, pursuant to the Child Abuse and Neglect Reporting Act (Pen. Code, § 11172), CII and MacFarlane are absolutely immune from liability as a result of the professional services which they rendered in evaluating the McMartin preschoolers for possible sexual abuse. Though plaintiff argues that the immunity afforded CII and MacFarlane under Penal Code section 11172 is limited, we held otherwise in our prior opinion when we concluded: "Penal code section 11172 was intended to provide absolute immunity to mandatory reporters for acts committed in a professional capacity or within the scope of employment giving rise to the obligation to report, as well as for the act of reporting."

(*Spitler* v. *Children's Institute International* (Feb. 28, 1990) No. B036111 [nonpub. opn.]; see also *McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393 [261 Cal.Rptr. 437]; *Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1223 [242 Cal.Rptr. 312].) Having stated the law of the case, we need not repeat our reasoning here.

*Dr. Heger's Alleged Statement*

A Los Angeles magazine article reported that during the course of the McMartin investigation, which was "hitting dead ends," Dr. Astrid Heger, CII's medical consultant, "admonished the parents: 'You've got to accept it. If your children went to McMartin, they were probably abused.' " Plaintiff bases a claim for defamation against CII on this article.

Consistent with the foregoing discussion, however, this communication does not provide the basis for an actionable libel. According to the article, Dr. Heger's statement was made to McMartin parents in connection with the ongoing child abuse investigation. Dr. Heger was retained by CII, whose services had been requested by the district attorney's office. Thus, not only was the statement absolutely privileged pursuant to section 47(b)(2) (having met the four-part *Silberg* test discussed at pages 438-439, *ante*), but Dr. Heger is immune from liability for this statement since she was a mandatory reporter acting in her professional capacity pursuant to Penal Code section 11172.

As stated above, CII cannot be held liable for any republication of Dr. Heger's absolutely privileged comments by third parties over whom it had no control. In the absence of any evidence (or even any allegation) that Dr. Heger or CII consented to, authorized, or participated in the republication of these remarks, plaintiff cannot succeed on a claim against CII based on this statement.

*MacFarlane's Comments Regarding the District Attorney's Decision to Dismiss Charges*

MacFarlane was asked her opinion about the district attorney's decision to drop the criminal charges against plaintiff and four of her codefendants. Plaintiff alleges that MacFarlane's response to that question, published in the

Easy Reader, defamed her.[5] The trial court ruled that these statements were not "of and concerning" plaintiff, and were nonactionable opinion concerning a matter of public concern which did not imply an assertion of any undisclosed, verifiably false fact. ■ Plaintiff offers no argument or authority challenging this ruling on appeal. Because the trial court's judgment is presumed to be correct (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]) and the burden is therefore on plaintiff to demonstrate the court's error (*Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932]), we do not consider the issue on this appeal. (*In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83].)

III

Finally, plaintiff makes the following arguments: (1) The statute of limitations should have been tolled due to her delayed discovery of certain defamatory statements made by MacFarlane; (2) "The trial court prematurely put the burden of proof on plaintiff on a concealment issue" (the "concealment issue" presumably relates to the delayed discovery/statute of limitations argument); (3) section 48.7, subdivision (a) mandates tolling of the statute of limitation with respect to plaintiff's claims; (4) plaintiff should have been permitted leave to amend, although she does not state what amendments she would make if permitted to do so; and (5) plaintiff should have been permitted further discovery pursuant to Code of Civil Procedure section 437c, subdivision (h), in order to counter Dr. Heger's recent denial that she made the statements attributed to her in the Los Angeles magazine article.

None of the foregoing arguments, even if accepted by the court, would change the outcome of this case. ■ Because we find that the allegedly defamatory statements were privileged, plaintiff's contention that the trial court erred in relying on the statute of limitations to disallow plaintiff's claims is unavailing. Similarly, because of our conclusion that the statements attributed to Dr. Heger in Los Angeles magazine were privileged under section 47, subd. (b), permitting plaintiff time to conduct additional discovery to contradict Dr. Heger's disavowal would be pointless.

Accordingly, for the reasons set forth above, the trial court properly disposed of plaintiff's claims on summary judgment.

---

[5]The text of the article is set forth in footnote 3 on page 437, *ante*.

The judgment is affirmed.

Fukuto, Acting P. J., and Nott, J., concurred.