[No. B077472. Second Dist., Div. Four. Apr. 21, 1995.]

MARTIN G. LAFFER, Plaintiff and Appellant, v.
LEVINSON, MILLER, JACOBS & PHILLIPS et al., Defendants and
Respondents.

**COUNSEL**

Bruce J. Kelton for Plaintiff and Appellant.

Hollins & Rice, Byron S. Hollins, Andrea Lynn Rice and Patricia A. Nevonen, Pass & Carlson and Susan F. Hannan for Defendants and Respondents.

## OPINION

VOGEL (C. S.), J.—Plaintiff and appellant Martin G. Laffer brought this action for intentional interference with economic relations, conspiracy, and intentional infliction of emotional distress, against the following defendants and respondents (who are a law firm and two of its partners and an associate attorney): Levinson, Miller, Jacobs & Phillips (hereafter LMJ&P), Steven B. Yankelevitz, Stanton Lee Phillips, and Michael D. Morris. The theory of appellant's action is that certain statements made by defendants to a third party, Donald S. Jacobs, damaged appellant by causing Jacobs to withdraw from negotiations to settle a cross-complaint by appellant against Jacobs in another action. The trial court granted summary judgment (Code Civ. Proc., § 437c) in favor of respondents on the ground that respondents' statements were absolutely privileged (Civ. Code, § 47, subd. (b)(2), the litigation privilege), because the statements related to prior litigation in which respondents were adverse to Jacobs. We reverse.

### FACTS

The facts are undisputed. They consist of allegations of appellant's first amended complaint which are undisputed for the purpose of the motions for summary judgment, undisputed evidence of the written and oral statements respondents made to Jacobs, and matters of judicial notice relating to prior litigation. The parties disagree whether an absolute privilege applies to the statements.

In a prior action, Neiter v. Jacobs (Super. Ct. L.A. County, 1986, No. C599896), two investors, Richard and Lois Neiter, sued Donald S. Jacobs, appellant Martin G. Laffer, respondent Steven B. Yankelevitz (the general partner defendants), and Coldwell Banker, for dissolution of a limited partnership and an accounting, damages for breach of fiduciary duty, negligence, and misrepresentation, arising from an investment in an office building. Laffer cross-complained against Jacobs for indemnity and contribution. Yankelevitz, who is a member of LMJ&P, also cross-complained against Jacobs for indemnity and contribution. Yankelevitz was represented by LMJ&P, through respondent Stanton Lee Phillips, a member of LMJ&P, and respondent Michael D. Morris, an associate of LMJ&P.

In November 1990, the defendants in the Neiter action settled with the Neiters. Appellant Laffer paid $14,000 toward the Neiter settlement, Jacobs paid $7,000 toward the Neiter settlement, and respondent Yankelevitz paid $13,000 toward the Neiter settlement.

In the mutual releases contained in the settlement agreement, Yankelevitz released Jacobs "from any and all claims in connection with the Lawsuit,

including any and all claims for contribution and/or indemnity. [¶] . . . Each party to this Agreement acknowledges that there is a risk that subsequent to the execution of this Agreement, one or more of them will discover facts or will discover, suffer or incur claims which are unknown or unanticipated at the time this Agreement was executed, which if known on the date of this Agreement, may have materially affected their respective decisions to give the releases contained in this Agreement. Despite this knowledge and understanding, each party agrees that he/she/it is assuming the risk of such unknown and unanticipated facts and claims, and in connection herewith, each expressly waives Section 1542 of the California Civil Code, which reads as follows: [¶] A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him might have materially affected his settlement with the debtor."

As to Laffer's cross-complaint against Jacobs for indemnity and contribution, however, the trial court in the Neiter action *denied* Jacobs's motion for determination of good faith settlement; thus, Laffer's cross-complaint against Jacobs remained pending.

Thereafter, Laffer and Jacobs negotiated a tentative settlement of Laffer's cross-complaint against Jacobs, which was that Jacobs pay Laffer $34,000, of which $12,000 would be paid in February 1991, and the remaining $22,000 in monthly payments concluding in January 1992.

Jacobs previously represented himself in the Neiter action. Jacobs decided to seek legal advice as to whether he should go forward with the tentative settlement of Laffer's cross-complaint against him. In December 1990, Jacobs telephoned respondent Michael D. Morris of respondent LMJ&P, who had previously represented respondent Yankelevitz in the Neiter action, and asked Morris if Morris would represent Jacobs on the Laffer cross-complaint. In the course of that conversation, Jacobs revealed to Morris the terms of Jacobs's tentative settlement with Laffer. Morris declined to represent Jacobs.

Morris disclosed to Yankelevitz the terms of Jacobs's proposed settlement with Laffer.

On December 20, 1990, respondent Yankelevitz, by letter under the letterhead of LMJ&P, wrote to Jacobs that Yankelevitz was "extremely upset" at hearing this, because, throughout the Neiter action Jacobs had represented that he had no money except nominal amounts to contribute toward a settlement. The Yankelevitz letter asserted it was now apparent

that, contrary to his prior representations, Jacobs had substantial funds to contribute toward the settlement. Yankelevitz requested that Jacobs pay Yankelevitz $10,000 toward Yankelevitz's expenses in the Neiter action. Yankelevitz went on to say, "If you are not prepared to reimburse me for these expenses, you will unfortunately leave me with no choice but to pursue legal action against you based upon fraud and misrepresentation in connection with the original settlement, which I will seek to set aside as it relates to you." Following the December 20, 1990, letter, Jacobs and Yankelevitz had a telephone conversation in which Yankelevitz reiterated the statements in the letter. Furthermore, in a telephone conversation, Morris confirmed to Jacobs that Morris had disclosed to Yankelevitz the terms of Jacobs's proposed settlement with Laffer.[1]

On January 23, 1991, Yankelevitz wrote another letter to Jacobs offering to accept $5,500 to settle the matter. Yankelevitz stated that he had spent $18,000 on the Neiter action (including expenses of $5,000 in addition to the $13,000 he paid the Neiters), that Jacobs had spent $7,000, that the difference in expenditures was $11,000, and therefore Yankelevitz requested reimbursement for half this amount, $5,500, "so as to make our expenditures equal on this matter."

On February 5, 1991, respondent Phillips, "[a]s the senior litigator" of LMJ&P, wrote another letter to Jacobs on behalf of Yankelevitz seeking to resolve, for $4,250, "[t]he matter of Yankelevitz v. Donald S. Jacobs, a suit for indemnification and other relief." Phillips stated that the matter had come across his desk that morning, that normally he would go ahead and file the complaint of Yankelevitz v. Jacobs, but he was making a last time effort to resolve the case. Phillips asserted, "I am absolutely satisfied that Mr. Yankelevitz' claims against you are totally and fully justified and meritorious, and that he will be successful should he pursue these claims as he is determined to do," and that "[y]ou may be assured that if the action is pursued against you, it will be pursued with great vigor and intensity."[2]

## The Present Action

Appellant Laffer's first amended complaint in the present action alleged that respondent's conduct and statements intimidated and threatened Jacobs,

---

[1]Jacobs declared that he considered his prior conversation with Morris to be confidential, and that Morris revealed it to Yankelevitz without Jacobs's consent. Morris declared that he had made clear to Jacobs in their first conversation that Morris would have to talk to respondent Yankelevitz and respondent Phillips, in order to secure a waiver of any potential conflicts of interest, before determining whether LMJ&P would represent Jacobs on the Laffer cross-complaint.

[2]In opposition to the motion for summary judgment, Laffer requested the trial court to take judicial notice that as of May 5, 1993, respondents had not filed any action against Jacobs.

and led Jacobs to believe that if he executed his proposed settlement with Laffer of the Laffer v. Jacobs cross-complaint, respondents would initiate a costly lawsuit against him. Therefore, in March 1991, Jacobs broke off settlement negotiations with Laffer and did not execute the proposed settlement agreement. Laffer alleged that, as a proximate result, Laffer suffered additional expenses of continued litigation, physical and emotional distress, and medical expenses.

## CONTENTIONS

Respondents contend, and the trial court in granting summary judgment agreed, that all of appellant's causes of action are barred by Civil Code section 47, subdivision (b)(2). Respondents contend their conduct was absolutely privileged, because it related to their prior settlement of the Neiter action.

Appellant contends the absolute privilege in Civil Code section 47, subdivision (b)(2) is inapplicable, because at the time of respondents' conduct, the Neiter action was no longer pending; it had been settled with mutual releases wherein Yankelevitz forever released Jacobs of any and all claims in connection with the Neiter lawsuit. Laffer contends respondents' conduct involved only a threat of *future* litigation, not governed by absolute privilege, but rather by the rule that communications preliminary to a *proposed* judicial proceeding are subject to a *qualified* privilege: the prospective judicial proceeding must be contemplated in good faith and under serious consideration. Laffer contends there are triable issues of fact as to respondents' good faith and serious contemplation of a future lawsuit against Jacobs. Agreeing with Laffer's contentions, we reverse.

## DISCUSSION

Civil Code section 47, subdivision (b)(2), provides, "A privileged publication or broadcast is one made: [¶] (b) In any . . . (2) judicial proceeding . . . ." This privilege is a defense to other torts as well as defamation, including, as alleged here, intentional interference with economic relations and intentional infliction of emotional distress. (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 215 [266 Cal.Rptr. 638, 786 P.2d 365].) If all the elements of the privilege are satisfied, the privilege is absolute, a complete defense regardless of malice. (*Ibid.*)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation;

and (4) that have some connection or logical relation to the action." (50 Cal.3d at p. 212.)

■ The element in question here is whether respondents' statements to Jacobs were made in a judicial proceeding. The judicial proceeding which respondents claim is involved is the Neiter action, in which Yankelevitz and Jacobs were codefendants as to the Neiters, and adversaries on Yankelevitz's cross-complaint against Jacobs. Appellant points out that at the time respondents made the statements, there was no pending action, either by the Neiters against Yankelevitz and Jacobs or by Yankelevitz against Jacobs. Those actions had been settled with mutual releases among the settling parties.

In reply to this argument, respondents contend that the absolute privilege is equally applicable to statements made *after* a judicial proceeding. The authority cited by respondents does not support that proposition. Respondents cite the statement in *Spitler* v. *Children's Institute International* (1992) 11 Cal.App.4th 432, 439 [14 Cal.Rptr.2d 197], that " 'the privilege is not limited to statements made *during* a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards, provided they have some relation to it.' " (Italics in original.) The reference to "afterwards" was dictum in *Spitler*, which involved statements by a witness *prior to* her preliminary hearing testimony in a pending criminal case, by which the witness allegedly "previewed" her testimony so as to be "coached" in delivering it. (*Id.* at pp. 438-439.) *Spitler* was quoting 5 Witkin, Summary of California Law (9th ed. 1988) Torts, section 505, page 591. Witkin went on to say, "Thus, statements in a complaint in a civil action, *in affidavits in support of a motion for new trial*, or in an insanity complaint, are within the privilege." (Italics added.) Only the case cited by Witkin involving affidavits in support of a motion for new trial, *Donnell* v. *Linforth* (1935) 11 Cal.App.2d 25, 26 [52 P.2d 937], concerned statements "after" a judicial proceeding, namely, a *trial*. We note that, in any event, a statement in an affidavit for a motion for new trial is made "in" the separate judicial proceeding on the motion. There was no such proceeding pending here. Laffer persuasively argues that respondents' statements here involved threats of *future* litigation. Yankelevitz and Phillips told Jacobs that if he did not agree to pay certain sums, respondents would file an action to set aside the prior settlement.

The privilege relating to statements threatening future litigation is more limited than the absolute privilege relating to pending litigation. Section 586 of the Restatement Second of Torts provides, "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which

he participates as counsel, if it has some relation to the proceeding."[3] ▇ Comment e to section 586, however, provides the following qualification: "*As to communications preliminary to a proposed judicial proceeding* the rule stated in this Section applies only when the communication has some relation to *a proceeding that is contemplated in good faith and under serious consideration.* The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." (Rest.2d Torts, § 586, com. e, p. 248, italics added.)

California courts have followed or cited with approval the rule of comment e to section 586 of the Restatement Second of Torts. (*Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408 421-422 [231 Cal.Rptr. 113], overruled on other grounds in *Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 219; *Herzog* v. *"A" Company, Inc.* (1982) 138 Cal.App.3d 656, 661-662 [188 Cal.Rptr. 155]; *Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 773, 777 [234 Cal.Rptr. 653]; see *Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1194-1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 315, fn. 7 [262 Cal.Rptr. 773]; *Larmour* v. *Campanale* (1979) 96 Cal.App.3d 566, 569, fn. 2 [158 Cal.Rptr. 143]; *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 393 [182 Cal.Rptr. 438].)

▇ Thus, the privilege relating to statements regarding prospective litigation is qualified rather than absolute; the prospective litigation must be contemplated in good faith and under serious consideration. (*Fuhrman* v. *California Satellite Systems, supra,* 179 Cal.App.3d 408, 421; *Financial Corp. of America* v. *Wilburn, supra,* 189 Cal.App.3d at p. 777.) "No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation." (*Fuhrman* v. *California Satellite Systems, supra,* 179 Cal.App.3d at p. 422, fn. 5.)

Respondents' motion for summary judgment was based solely on the absolute privilege. Upon our determination that a qualified, rather than absolute, privilege applies, the summary judgment must be reversed. There are triable issues of fact as to respondents' good faith serious contemplation of future litigation. (*Fuhrman* v. *California Satellite Systems, supra,* 179 Cal.App.3d at p. 422 & fn. 6.) One factor supporting a contrary inference is respondents' subsequent failure to file the threatened action. (*Id.* at p. 423, fn. 7; cf. *ITT Telecom Products Corp.* v. *Dooley, supra,* 214 Cal.App.3d at p.

---

[3]Section 587 of the Restatement Second of Torts states a similar rule for a party to litigation.

315, fn. 7 ["ITT here does not question that Dooley made prelitigation statements in good faith contemplation of litigation"]; *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 576, fn. 5 [131 Cal.Rptr. 592] ["[I]t is unchallenged that the letter was relevant to the lawsuit initiated shortly after the letter was written and after it failed to achieve its objective of settlement"]; *Rubin* v. *Green, supra,* 4 Cal.4th at pp. 1191, 1195 [obviously litigation was seriously contemplated by defendant attorneys, because gist of plaintiff's complaint was that attorneys illegally solicited clients for lawsuit].) Another factor raising a doubt whether respondents in good faith seriously contemplated litigation is the strong language of their release in the prior action, releasing Jacobs from any and all claims for indemnity in connection with the Neiter action and waiving the protection of Civil Code section 1542.

## SEPARATE DEFENSE OF MORRIS

Respondent Morris contends that the present action against him has a different basis than against the other respondents, and that his privilege was absolute even if the other respondents' privilege was only qualified. Morris argues that the only allegations against him involve Jacobs's request that Morris represent Jacobs on the Laffer v. Jacobs cross-complaint, which *was* still pending. Morris contends that his subsequent disclosure to Yankelevitz of the terms of Jacobs's tentative settlement with Laffer was only for the purpose of determining whether Morris could represent Jacobs on the pending cross-complaint, therefore his communications met all the requirements of the absolute privilege.

We conclude Morris is not separately entitled to affirmance of the judgment as to him. ▇ On summary judgment, a moving defendant must conclusively negate a necessary element of the plaintiff's case and demonstrate that as a matter of law none of the plaintiff's causes of action has merit. (*Eastern Aviation Group, Inc.* v. *Airborne Express, Inc.* (1992) 6 Cal.App.4th 1448, 1451 [8 Cal.Rptr.2d 355].) Laffer's first amended complaint alleged that all respondents ratified the acts of the others, and conspired with the others, wantonly and maliciously to vex Laffer, intentionally to interfere with his prospective economic relation with Jacobs, and intentionally to cause Laffer emotional distress. Morris's motion for summary judgment did not conclusively show that his disclosure of the terms of Jacobs's settlement with Laffer was related to and for the purpose of achieving the object of the Laffer v. Jacobs cross-complaint, rather than for the unrelated and improper purposes alleged by Laffer.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellant.

Woods (A. M.), P. J., and Epstein, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 20, 1995.