Filed 10/19/23  Biztracker Systems of St. John v. Lavco Solutions CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| BIZTRACKER SYSTEMS OF ST. JOHN, LLC,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>LAVCO SOLUTIONS, INC.<br><br>   Defendant and Respondent. | B317109<br><br>(Los Angeles County<br> Super. Ct. No. 20STCV02305) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed.

SLC Law Group and Louis F. Teran for Plaintiff and Appellant.

The Internet Law Group, Kavon Adli, Richard DeLiberty and David Newman for Defendant and Respondent.

———————————

# INTRODUCTION

Appellant Biztracker Systems of St. John, LLC (Biztracker) and respondent Lavco Solutions, Inc. (Lavco) both sell products on Amazon.com (Amazon). In 2019, Lavco complained to Amazon that several of Biztracker's listings were for counterfeit products. Amazon removed the listings and later suspended Biztracker's rights to sell any products on Amazon. Amazon lifted the suspension about six weeks later after Lavco withdrew its complaints. Biztracker then sued Lavco in superior court, alleging Lavco made false allegations that caused Amazon to suspend Biztracker's account to unfairly compete with Biztracker, and that those false allegations caused Biztracker to lose sales and otherwise suffer damages.

After Biztracker sued, Lavco filed a federal court lawsuit alleging that Biztracker improperly "piggybacked" on Amazon listings for products bearing Lavco's trademark, "Epsilont." After filing its federal lawsuit, Lavco moved for summary judgment in Biztracker's superior court lawsuit on the ground, among others, that its complaints to Amazon were protected by the litigation privilege codified in Civil Code section 47, subdivision (b). That privilege protects prelitigation communication when (among other things) litigation related to such communication is under serious consideration at the time of the communication. The trial court granted the motion, concluding that Biztracker's causes of action all failed because Lavco's communications to Amazon were protected by the privilege.

Biztracker appeals, arguing triable issues of fact exist regarding application of the litigation privilege. Whether related litigation is under serious consideration at the time of a communication is a factual issue. Because disputed issues of fact

2

exist concerning whether Lavco was seriously considering suing Biztracker on claims related to Lavco's correspondence with Amazon at the time of that correspondence, we reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Amazon Suspends Biztracker's Account and Biztracker Sues Its Competitor Lavco

Biztracker and Lavco both utilize Amazon's website to sell point-of-sale (POS) products, which are devices that allow businesses to collect payments from customers. Biztracker and Lavco sold several products on Amazon using the same Amazon Standard Identification Number (ASIN). The ASIN is a 10-character alphanumeric identifier assigned by Amazon to a specific product or bundle of products. A seller can use an ASIN created by another seller if they sell the same product or bundle of products.

In August 2019, Lavco complained to Amazon that six of Biztracker's product listings were trademark infringing or counterfeit, and Amazon removed the six listings. On October 12, 2019, Amazon sent an e-mail to Biztracker indicating that it had suspended Biztracker's account. The notice indicated the suspension related to four of the listings that had been removed in August 2019, which had the following ASINs: B077ZZJHF8, B07C4KCHXF, B0772XG2Q5, and B074N8PQ8R. On November 19, 2019, Lavco retracted its complaints regarding those four listings, and three days later Amazon reinstated Biztracker's account.

On January 17, 2020, Biztracker sued Lavco in superior court claiming that Lavco made false representations to Amazon to get Amazon to suspend Biztracker's account. Biztracker

3

alleged that, "in or around August 2019," Lavco had falsely "represented to Amazon in writing that [Biztracker] was selling products that were counterfeits, not authentic, infringing someone else's intellectual property, or illegal," and Amazon suspended Biztracker's account based on those false representations. Biztracker alleged it lost sales revenue due to the suspension. Biztracker asserted three causes of action: intentional interference with contractual relations; trade libel; and unlawful, unfair, and fraudulent business practices in violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.).

## B.    Lavco Sues Biztracker in Federal Court

On April 9, 2020, Lavco sued Biztracker in the United States District Court for the Central District of California. (*Lavco Solutions v. Biztracker*, case No. 2:20-cv-03286.) Lavco's first amended complaint asserted causes of action for trademark infringement, false designation of origin and false advertising, common law unfair competition and trademark infringement, and unfair business practices under the UCL. Lavco alleged that it owned the trademark "Epsilont,"[1] and sold cash drawers and receipt paper branded with the Epsilont mark. It further alleged, "Almost as soon as Lavco began selling its POS products on Amazon in 2016, Biztracker began improperly 'piggybacking' on

_____

[1] Lavco, which is a corporation, acknowledged that the trademark registration for "Epsilont" identified the mark's owner as a California LLC. Lavco alleged that it was "preparing papers to file with the Trademark Office to correct the registration so that it correctly refers to Lavco Solutions as a California corporation."

4

E[psilont] listings.  For example, when Lavco listed an E[psilont]-branded cash drawer or E[psilont]-branded printer paper as part of an E[psilont] bundle, Biztracker would add itself to the listing as offering the same products.  But a customer who purchased from Biztracker through the listing would receive a counterfeit bundle with a generic cash drawer or with receipt paper that was generic or differently branded, rather than the E[psilont] bundle with the E[psilont]-branded cash drawer or receipt paper offered by Lavco."**2**

## C.    Lavco's Motion for Summary Judgment

On August 31, 2021, Lavco filed a motion for summary judgment or, in the alternative, summary adjudication in Biztracker's superior court lawsuit.  Lavco contended that all three of Biztracker's causes of action failed because Lavco's communications to Amazon about Biztracker's product listings were protected by the litigation privilege and the *Noerr-*

---

**2** Biztracker asserts in its opening brief that Lavco's federal lawsuit was dismissed "for lack of evidence that [Biztracker] ever actually used the E[psilont] mark," and attaches a copy of the district court's summary judgment order to its brief.  We do not consider this document or Biztracker's assertion, as neither was presented to the trial court.  "It is well settled that in reviewing a summary judgment, ' ". . . the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal.  [Citation.]" ' " (*Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654, 661.)  We likewise do not consider the district court's ruling on Biztracker's motion for attorney's fees, which Lavco references in its briefing.

*Pennington*[3] doctrine. Lavco's requests for summary adjudication were based on additional, independent grounds not relevant to this appeal.[4]

Lavco, through the declaration of its chief executive officer Armen Vartanian and attached exhibits, adduced evidence that it had complained to Amazon about Biztracker listings on several occasions between 2016 and 2018.[5] However, Amazon's 2019 suspension notice did not reference any of the listings at issue in these complaints. The majority of these complaints concerned listings for products branded with the Epsilont mark, such as a cash register drawer or receipt paper.

As to its complaints to Amazon regarding the four listings referenced in the suspension notice, Lavco presented direct evidence of only one complaint. Specifically, on May 9, 2019, Lavco sent an e-mail to Amazon complaining about Biztracker's listing under ASIN B077ZZJHF8. The e-mail stated, "This seller is not an authorized Epsilont reseller and is selling counterfeit items. Have this seller suspended immediately from this

---

[3] The doctrine is named for two cases, *United Mine Workers v. Pennington* (1965) 381 U.S. 657, 670 [85 S.Ct. 1585, 14 L.Ed.2d 626] and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961) 365 U.S. 127 [81 S.Ct. 523, 5 L.Ed.2d 464].

[4] In their appellate briefs, the parties focus exclusively on whether the litigation privilege bars Biztracker's causes of action. Neither party mentions the *Noerr-Pennington* doctrine or the grounds on which summary adjudication was sought. Accordingly, we focus solely on the litigation privilege issue.

[5] Vartanian's declaration indicated the date of one complaint was August 8, 2019, but the exhibits showed the correct date was August 8, *2018*.

listing."[6]  Amazon removed the listing in August 2019, but it is unclear from the record whether this resulted from the May 9, 2019 e-mail or for some other reason.

Lavco also adduced three other pieces of evidence that it had complained to Amazon about the four listings implicated in the suspension (ASINs B07C4KCHXF, B0772XG2Q5, B074N8PQ8R, and B077ZZJHF8).  First, a report in Biztracker's Amazon account, authenticated by Biztracker's representative Kristopher Youngs, showed that Amazon had removed the four listings in August 2019 in response to complaints.  Although the report does not identify who made the complaints, Lavco concedes it was the source.[7]

Second, on October 16, 2019, an attorney representing Biztracker, Mario Simonyan, wrote to Lavco stating that Lavco "[had] submitted several complaints to Amazon alleging that our [c]lient's products listed under ASINs B077ZZJHF8, B07C4KCHXF, B0772XG2Q5, and B074N8PQ8R are counterfeit and infringing on your trademark rights under Trademark Registration No. 5185607 (EPSILONT)."  Simonyan characterized the complaints as "frivolous," asserting that Biztracker's products were authentic and that Lavco's trademark registration "does not cover the goods sold under the ASINs at issue."  He further asserted, "the product pictures used for these

---

[6] The title of the listing was "Square Register Kitchen Receipt Printer," and thus did not include an item branded with the Epsilont mark.

[7] The report also shows that two other Biztracker listings were removed; these listings were not referenced in the suspension notice.

ASINs bear the marks of Star Micronics and Epson - not Epsilont."

Third, on November 19, 2019, Vartanian sent an e-mail to Amazon retracting complaints by Lavco which related to the four listings referenced in the suspension notice (there were three complaints, two relating to a single ASIN listing each, and the third relating to two ASIN listings). Vartanian averred that, in response to Simonyan's letter, Lavco offered to retract its complaints because it "wished to avoid any potential legal issues arising out of its complaints to Amazon and did not want to [*sic*] anything to adversely affect its relationship with Epson and Star Micronics." According to Vartanian, Lavco's offer was conditioned on Biztracker agreeing "not to advertise its products on the ASIN listings at issue," and an e-mail from Lavco to Simonyan stated that Simonyan had "mentioned that [Biztracker] would like to resolve the dispute by having [Lavco] agree to retract the complaints [it] filed with Amazon and in exchange [Biztracker] would agree to not list on [Lavco's] Amazon listings." However, no evidence was presented as to whether Biztracker ultimately agreed to this in exchange for Lavco's retraction.

Lavco's motion argued that "[its] communications with Amazon regarding Biztracker's alleged infringement of the E[psilont] mark" were connected with its federal lawsuit, which was filed on April 9, 2020. In support of this contention, it submitted copies of its first amended complaint in the federal lawsuit and the district court's order denying Biztracker's motion to dismiss the first amended complaint.

**D.** **Biztracker's Opposition to the Motion for Summary Judgment**

In its summary judgment opposition, Biztracker contended that "[t]he four (4) receipt printers at issue in this action are not related to [Lavco] or the E[psilont] trademark," not infringing of any Lavco trademark, and thus unrelated to the later filed federal lawsuit. Biztracker pointed out that, as shown on Amazon's suspension notice, none of the four ASIN listings included the Epsilont mark. Biztracker argued that "nowhere in its [m]otion, supporting declarations, or supporting evidence, does [Lavco] provide anything to suggest that the four (4) ASINs for which [Biztracker's] account was suspended are associated with [Lavco] or the E[psilont] mark."

Biztracker also contended that, except for the May 9, 2019 complaint, Lavco's motion failed to present the complaints it made to Amazon about the ASINs referenced in the suspension notice. Thus, argued Biztracker, the court could not determine whether the communications were protected by the litigation privilege.

Biztracker alternatively argued that if Lavco's communications to Amazon about the four ASINs referenced in the suspension notice were related to the Epsilont mark, then the representations were not protected by the litigation privilege because they were a "sham" given that the product listings did not mention the Epsilont mark. Biztracker further argued that Lavco did not have standing to allege that Biztracker infringed the Epsilont mark because Lavco did not own the federally registered Epsilont mark, and that in any event the registered mark applied to unrelated items and did not cover the POS products at issue.

9

Finally, Biztracker argued that Lavco had "hindered" its ability to conduct discovery. However, Biztracker did not identify any facts it claimed were essential for it to oppose the motion, as required by Code of Civil Procedure[8] section 437c, subdivision (h), nor did it request that the court deny or continue the motion based on the alleged discovery misconduct.[9]

### E. Lavco's Reply in Support of its Motion for Summary Judgment

In its reply brief, Lavco highlighted that the suspension notice did not indicate that Biztracker's suspension was related to Lavco's complaints. Lavco also pointed out that Biztracker attorney Simonyan's letter characterized the complaints as being connected to the Epsilont mark. Lavco responded to Biztracker's arguments that Lavco had failed to show it owned the federally registered trademark for Epsilont by contending it had an interest in an unregistered mark.

Responding to Biztracker's claim that Lavco had "hindered" its ability to obtain discovery, Lavco pointed out that Biztracker did not request a continuance of the summary judgment hearing in accordance with section 437c, subdivision (h), and had not presented facts supporting a continuance.

---

[8] Unspecified statutory references are to the Code of Civil Procedure.

[9] Biztracker included in the record several motions it filed to compel discovery from Lavco, including one that the court heard and denied on the same day as the motion for summary judgment. Biztracker does not contend that the trial court erred in its rulings on these motions, and thus we do not discuss them.

## F.    The Trial Court's Ruling

The trial court granted Lavco's motion for summary judgment on October 22, 2021.  The trial court concluded that the litigation privilege applied to the communications at issue and thus barred Biztracker's claims.  The court's ruling stated, "The only material issue here is whether [Lavco], in defense of the E[psilont] trademark, communicated with Amazon about possible violations of this trademark by [Biztracker].  It is not material whether [Biztracker]'s Amazon account was suspended specifically in reference to the four ASINs reported to Amazon by [Lavco].  The [s]uspension [n]otice that [Biztracker] produced did not cite [Lavco] anywhere in the document."  Concerning the letter written by Biztracker's former counsel, Simonyan, the court found that, "In reference to the specific ASINs cited by Amazon in their [s]uspension [n]otice to [Biztracker], [Biztracker]'s former attorney identified [Lavco]'s actions as related to trademark defense."  The court concluded "[Lavco]'s complaints to Amazon present communications made in quasi-judicial proceedings by a litigant to achieve the object of litigation that has logical relation to the action."[10]

---

[10] The appellate record includes pleadings related to a motion for reconsideration Biztracker filed regarding the trial court's summary judgment ruling.  The court denied the motion, and Biztracker does not contend before us that the court erred in doing so.  Nor does Biztracker explain how the motion for reconsideration and related evidence are relevant to the issues on appeal.  Accordingly, we do not consider the motion or the associated evidence.

The trial court entered judgment in favor of Lavco on December 10, 2021. Biztracker filed a timely notice of appeal on December 13, 2021.

## DISCUSSION

### A. Standard of Review

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]' [Citation.]" (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)

A defendant who moves for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see § 437c, subd. (o).) Such a defendant also "bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to the [plaintiff] to demonstrate the existence of a triable issue of material fact." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250.) A triable issue of material fact exists " ' "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."

[Citation.]' [Citations.]" (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 389-390.)

Lavco "has 'the burden of establishing the preliminary facts' to support its 'affirmative defense of the litigation privilege.' [Citations.]" (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 947; see also *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 469 [defendant relying on affirmative defense in moving for summary judgment has "an initial burden of production to make a prima facie showing" that defense applies].)

Finally, "[w]e . . . are not bound by the reasons in [the trial court's] summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Joshi v. Fitness International, LLC* (2022) 80 Cal.App.5th 814, 824.)

## B.    The Litigation Privilege

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides [in relevant part] that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. . . . [Citation.]  'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings;[11] (2) by litigants or other participants authorized

---

[11] The trial court's summary judgment ruling referred to Lavco's communications with Amazon as "communications made in quasi-judicial proceedings."  The term "quasi-judicial" refers to the protection afforded to communications made in an " 'official proceeding authorized by law.' " (*Ascherman v. Natanson* (1972) 23 Cal.App.3d 861, 865.)  Neither party took the position in the trial court that Amazon's dispute resolution process could be deemed an "official proceeding authorized by law" under Civil

13

by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) " 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' [Citation.] In order to achieve this purpose of curtailing derivative lawsuits, we have given the litigation privilege a broad interpretation." (*Ibid.*)

"A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. [Citations.] [¶] The policy supporting the litigation privilege is furthered only if litigation is seriously considered: 'It is important to distinguish between the lack of a good faith intention to bring a suit and publications which are made without a good faith belief in their truth, i.e., malicious publications. The latter, when made in good faith anticipation of litigation, are protected as part of the price paid for affording litigants the utmost freedom of access to the courts. This policy consideration is not advanced, however, when the person

_____

Code section 47, subdivision (b)(3), nor does either party take that position on appeal. To the extent the trial court so concluded, it was mistaken. The Amazon complaint process, administered by a business corporation, cannot qualify as an official proceeding authorized by law because the process is neither "official" nor "authorized by law." (See, e.g., *Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156 [concluding a professional association's disciplinary actions could not be deemed "official proceedings" under Civ. Code, § 47].)

publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has no "connection or logical relation" to an action and is not made "to achieve the objects" of any litigation [citation]. No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation.' [Citations.]" (*Action Apartment, supra*, 41 Cal.4th at p. 1251.) "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact."[12] (*Ibid.*)

To be protected by the litigation privilege, a prelitigation communication must be made " 'to achieve the objects of the litigation' " and have " 'some connection or logical relation to the action.' " (*Action Apartment, supra*, 41 Cal.4th at p. 1241, quoting *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) As our Supreme Court explained in *Silberg*, "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action. A good example of an application of the principle is found in the cases

---

[12] Biztracker relies on *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, which held that the litigation privilege could protect prelitigation communications only if a lawsuit was "actually . . . suggested or proposed, orally or in writing" and "the contemplated litigation [was] *imminent.*" (*Id.* at pp. 34, 35.) We apply the test articulated by the Supreme Court in *Action Apartment*, and in any event our analysis does not turn on whether Lavco's communications suggested or proposed litigation or whether Lavco contemplated "imminent" litigation.

holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action. [Citations.]" (*Silberg*, *supra*, at pp. 219-220.) "[T]he 'connection or logical relation' which a communication must bear to litigation in order for the privilege to apply, is a *functional* connection. That is to say, the *communicative act*—be it a document filed with the court, a letter between counsel or an oral statement—must function as a necessary or useful step in the litigation process and must serve its purposes. This is a very different thing from saying that the communication's *content* need only be related in some way to the subject matter of the litigation." (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1146.)[13]

Ensuring that a communication is relevant to the subject litigation is especially important when the communication is made prior to the filing of litigation. (*Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 150-151 [concluding that the litigation privilege did not protect a reference in a prelitigation demand letter to the plaintiff's criminal record, because any connection between the plaintiff's criminal history

---

[13] Attempting to extend the scope of communications potentially covered by the privilege, Lavco cites *Rubin v. Green* (1993) 4 Cal.4th 1187, where our Supreme Court stated "that communications with 'some relation' to an anticipated lawsuit are . . . within the [litigation] privilege." (*Id.* at p. 1194, italics omitted.) In *Rubin*, the court did not address the degree of connection required as the communications at issue expressly concerned a proposed lawsuit. (*Id.* at p. 1195.) Nor did it intend to alter the test it had articulated three years earlier in *Silberg* regarding the degree of required connection, as it later reaffirmed the *Silberg* formulation in *Action Apartment*.

16

and the issues in the threatened litigation was tenuous].)  As one Court of Appeal noted in an early case applying the privilege to a prelitigation communication, "the fact that a suit eventually is filed does not protect all defamatory communications made prior to the filing.  But most potential abuse of this privilege for prelitigation communications can be prevented by enforcement of the relevancy requirement." (*Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 578, fn. 6.)

## C. Triable Issues of Fact Exist Regarding the Potential Application of the Litigation Privilege

While the parties present numerous arguments, we need discuss only one as we find it dispositive.  We conclude that the trial court erred in granting summary judgment because there are disputed issues of fact as to whether Lavco was seriously considering related litigation when it complained to Amazon.

### 1. *Whether Lavco Was Seriously Considering Litigation at the Time of the Amazon Complaints*[14]

Lavco's evidence that it was contemplating litigation at the time it communicated with Amazon consists solely of the fact it later filed the federal lawsuit.  One can draw the inference from the filing of that lawsuit approximately eight months after the

---

[14] Biztracker did not directly present this aspect of the litigation privilege test to the trial court, but Lavco does not claim waiver or forfeiture.  We exercise our discretion to consider this issue as Lavco bore the burden below to establish it, both parties have fully briefed the issue, our review is de novo, and the issue involved is a question of law that we may properly consider for the first time on appeal.  (E.g., *Greenlake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6.)

fact that Lavco was seriously considering litigation when it complained to Amazon. But one can also reasonably draw contrary conclusions from the evidence—that Lavco did not seriously consider litigation when it complained to Amazon, and that it was not until Biztracker itself sued that Lavco thought to pursue litigation.

There is no evidence that Lavco consulted with an attorney prior to submitting its complaints to Amazon. Vartanian, Lavco's CEO, did not aver that Lavco intended to sue Biztracker at the time Lavco complained to Amazon. When contacted by Biztracker's attorney after Amazon suspended Biztracker's account, Lavco offered to retract its complaints because, according to Vartanian, it "wished to avoid any potential legal issues arising out of its complaints." Lavco then did in fact retract its complaints. Lavco ultimately sued Biztracker, but only after retracting its complaints to Amazon and after Biztracker had filed its state-court lawsuit.

One can fairly infer from these facts that Lavco was not seriously considering litigation at the time it made the complaints to Amazon at issue, such that a triable issue of fact exists concerning application of the litigation privilege. (E.g., *Action Apartment*, *supra*, 41 Cal.4th at p. 1251 [whether litigation was under serious consideration at the time of a given communication "is an issue of fact"]; *Cornell v. Berkeley Tennis Club*, *supra*, 18 Cal.App.5th at p. 948 [error to summarily adjudicate the plaintiff's defamation claim as barred by the litigation privilege because there was a triable issue whether the defendant contemplated litigation when it made the allegedly defamatory statements]; *Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1381 [error to grant summary

judgment based on the litigation privilege because "[i]t remain[ed] a triable issue of fact whether . . . imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the dispute between [the parties]"]; *Laffer v. Levinson, Miller, Jacobs & Phillips* (1995) 34 Cal.App.4th 117, 124-125 [reversing summary judgment ruling premised on the litigation privilege because there were triable issues whether the party asserting the privilege had in good faith seriously contemplated future litigation].)

2. *Whether Lavco's Communications with Amazon Sufficiently Related to any Contemplated Litigation*

There is also a material factual dispute regarding whether the communications to Amazon are sufficiently related to the litigation Lavco purportedly contemplated (which, as stated above, it identified as the federal complaint it eventually filed). The Lavco complaints to Amazon that resulted in Biztracker's suspension and that are at issue in the superior court lawsuit all involved listings that did not include any product branded with the Epsilont mark. In contrast, all of Lavco's causes of action in the federal lawsuit were premised on allegations that Biztracker sold products under Amazon listings that included a product branded with the Epsilont mark. While Lavco's first amended federal complaint did not purport to provide a complete list of the products at issue in that lawsuit, and used phrases such as "[a]mong other products" and "[f]or example," there is no evidence that the lawsuit addressed listings that did not include a product branded with the Epsilont mark or did not include "Epsilont" in the title.

Lavco makes no effort to compare the allegations in its federal lawsuit with the complaints it made about the four

19

listings identified in the suspension notice.  Lavco instead relies on the letter written by Biztracker's former attorney, Simonyan, in which it claims Simonyan acknowledged that Lavco complained about the four listings to protect its interest in the Epsilont mark.  The trial court also relied on this letter.  Lavco essentially posits the following syllogism: it sought to protect its Epsilont trademark in its complaints to Amazon, and it also sought to protect its trademark in the federal lawsuit, and therefore its complaints to Amazon related to the federal lawsuit.  Perhaps.  But one can also reach the opposite conclusion because the trademark claims Lavco asserted in its complaints to Amazon were not the same as the claims it asserted in its federal lawsuit, either in terms of the products at issue or the theory of liability.

While Biztracker attorney Simonyan stated that Lavco was complaining Biztracker's products were "counterfeit and infringing on [Lavco's] trademark rights," he disputed Lavco's assertion of trademark rights because, in part, "the product pictures used for these ASINs bear the marks of Star Micronics and Epson - not Epsilont."  Thus, according to Simonyan's letter, Lavco was *not* complaining about Biztracker selling products bearing the Epsilont mark.  Furthermore, evidence shows that (1) the listings at issue in Simonyan's letter (based on the suspension notice) did not include "Epsilont" in the title, (2) whereas the products at issue in Lavco's federal lawsuit did bear the Epsilont mark, and (3) Lavco's federal litigative theory was that Biztracker was infringing the Epsilont mark.

To establish the relatedness of its later lawsuit, Lavco relies on Biztracker's agreement to Lavco's undisputed material fact No. 39, which stated:  "On April 9, 2020, Lavco filed a federal lawsuit against Biztracker in the Central District of California,

20

entitled Lavco Solutions vs. Biztracker, Case No. 2:20-cv-03286, which is based on the complaints that Lavco made to Amazon in August 2019 regarding Biztracker's alleged violations of its intellectual property rights in the EPSILONT mark." But Biztracker's failure to dispute this statement does not equate to a concession that Lavco's complaints regarding the four listings at issue in the suspension notice were related to Lavco's federal lawsuit. To begin with, Lavco complained to Amazon about six ASINs: four of which led to the suspension from Amazon, and two of which did not. Thus, while the federal lawsuit was based on complaints Lavco made to Amazon in August 2019, that does not mean the federal lawsuit was based on each and every one of those complaints—one could instead draw the fair inference that the federal lawsuit related to the two complaints that did not lead to the suspension (and which thus do not form the basis for the superior court lawsuit). That inference is bolstered by Biztracker's consistent argument in the superior court case that Lavco's complaints about the four listings referenced in the suspension notice were not based on a claim that Biztracker infringed on the Epsilont mark.

Lavco also relies on evidence of a complaint it asserts it made to Amazon on August 8, 2019; however, the exhibit concerning this complaint shows that Lavco submitted it on August 8, 2018—approximately 20 months before any litigation was filed. More importantly, this complaint concerned the listing under ASIN B01MTKIL5K, which is not one of the listings at issue in the suspension notice. Lavco's final contention, that Biztracker "conceded in the opposition separate statement [that] at least one complaint that Lavco made to Amazon was the basis of Lavco's lawsuit against Biztracker," is unavailing for similar

21

reasons. There is no dispute that some of Lavco's complaints to Amazon about Biztracker's listings related to the legal claims Lavco later made in its federal lawsuit, but this does not conclusively resolve whether the complaints related to the four listings referenced in the suspension notice were in furtherance of the federal lawsuit's objectives.

Under these circumstances, a material factual dispute exists concerning whether Lavco's complaints to Amazon were made " 'to achieve the objects of the litigation' " or had a " 'connection or logical relation to the action' " that Lavco later filed. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1241.) The requirement that the communication " 'achieve the objects of the litigation' . . . cannot be satisfied by communications which only serve interests that happen to parallel or complement a party's interests in the litigation." (*Rothman v. Jackson*, *supra*, 49 Cal.App.4th at p. 1147.)

We lastly observe that *TP Link USA Corporation v. Careful Shopper LLC* (C.D. Cal. 2020) 2020 WL 4353678, on which Lavco relies, is inapposite. Putting aside that it has no precedential value, *TP Link* is distinguishable. First, the defendant in *TP Link* did not dispute whether the plaintiff had seriously considered litigation at the time it complained to Amazon; the defendant instead argued that the litigation privilege did not apply because the plaintiff's complaints themselves "lacked a requisite 'unequivocal expression of contemplated litigation,' " which the defendant contended was required under California law. (*Id.* at p. *4.) Our holding that there is a triable issue whether Lavco seriously considered litigation is based on the circumstances surrounding Lavco's complaints to Amazon and its offer to retract its complaints to avoid litigation, not the language

of its complaints (nearly all of which Lavco did not include in its summary judgment motion).[15]  Second, *TP Link* is distinguishable because, unlike Lavco's complaints to Amazon, the plaintiff's complaints to Amazon in *TP Link* involved the same allegedly infringing product listings at issue in the filed trademark infringement case such that the relatedness between the complaints and the later lawsuit was unquestionable.  (*Id.* at pp. *1, *5.)

---

[15] The *TP Link* court stated, in a footnote, "where, as here, the supposed language of the complaint has been provided, application of the litigation privilege is a question of law, not fact."  (*TP Link USA Corporation v. Careful Shopper LLC*, *supra*, 2020 WL 4353678 at p. *5, fn. 5.)  We do not understand this to mean that the question whether a party seriously considered litigation at the time of the subject prelitigation communication is an issue of law based on the language of the communication.  That would contradict well-established California law that holds the issue is a question of fact.  (E.g., *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 357-358; *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 683-685.)

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings. Biztracker is awarded costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:


ROTHSCHILD, P.J.


CHANEY, J.